Appellant was convicted of rape and sentenced to imprisonment for twenty-two years.
At the threshold (in limine) of the trial, defendant presented a motion to suppress any evidence of defendant's prior conviction of burglary and grand larceny. It was urged then, and it is urged now, that unless the court suppressed such evidence, defense of the case would be imperiled by reason of the likelihood of more injury to defendant by reason of such evidence if defendant took the stand than would be the benefit to defendant by his taking the stand as a witness. The court overruled the motion, and defendant did not take the stand as a witness. No doubt defendant was correct as to his reason for the motion. He was not correct in his contention then, or now, that the motion should have been granted. There was no effort by the prosecution to present evidence of defendant's previous conviction of a crime involving moral turpitude. It could not have done so under the circumstances in this case, unless and until defendant had taken the stand as a witness. Notwithstanding the tactical advantage defendant may have obtained by reason of any granting of the motion, neither he nor the court had a right to forestall the State's right to impeach defendant as a witness, if he took the stand, by proof of his previous conviction of a crime involving moral turpitude, established by Code of Alabama 1975, § 12-21-162
(b). There can be no doubt that both burglary and grand larceny involve moral turpitude. Matthews v. State, 51 Ala. App. 417,286 So.2d 91 (1973).
Another insistence of appellant is worthy of serious concern. He contends that the evidence is not sufficient to present an issue for the jury to decide as to whether the essential element of penetration occurred.
The alleged victim, who had "never been married" and was the mother of three children, testified that about 11:30 on the night of March 3, 1978, while she was in her home alone, her children being with her mother, defendant came to her door and asked to use the telephone. According to her further testimony, after using the telephone, defendant asked to use the bathroom; after coming out of the bathroom, he threw his scarf around the victim's neck, that she started "fighting and struggling and hollering." He choked her until she "passed out." She said that when she "was coming to, he was getting up off of me pulling his pants up," and that she "ran out the door" and "started screaming." Defendant immediately left the premises. She proceeded to obtain help from her neighbors, who took her to the hospital where she was given a "rape test." Officers were called and they investigated the incident. She said her neck was "all scarred up," that her "eyes — the blood vessels in my eyes was busted." She said that he threw her on the floor, that when she woke up her clothes were *Page 398 
down toward her feet, that her pants had been pulled down and were torn from "where it had to snap and zipper. Just ripped on down." Appellant does not question the sufficiency of the evidence as to force and absence of consent. On the particular issue presented, we quote additional portions of the record. On direct examination was the following:
 "Q. And did you see any private parts of his body when he was raising up from you?
"A. Yes.
"Q. Now, did his body actually penetrate your body?
"A. Yes."
On redirect examination, she testified:
 "Q. And you testify that you passed out. Again, this is important. Did his body actually penetrate your body?
"A. Yes."
It is unfortunate, we think, that there was not more specificity in the questions asked the witness on the subject of penetration, which is an essential element of the crime of rape. It is to be recognized, however, that there is considerable tenuity involved in expressing the particular part of the body of the man that must penetrate and that of the woman that must be penetrated in order to consummate the crime. If it was not such part of either, the crime was not committed. Notwithstanding our dissatisfaction with the lack of definiteness in the language used, it would not seem reasonable to conclude that by the use of the word "body" any part of the body of the defendant or the victim was meant, or understood, other than the essential respective parts, when all of the circumstances presented by the evidence and indicated above are shown, as to which there is a natural reluctance to repeat or to express in great detail.
We find no case directly in point, and none is cited, that would be applicable to the unique language used as to "penetration," but we refer to the cases that hold that penetration "need not be proved in any particular form of words, and circumstantial evidence will suffice." Beckley v.State, Ala.Cr.App., 353 So.2d 542, 544 (1977), with authorities cited. It seems to follow necessarily that also the nature of the penetration that is essential "need not be proved in any particular form of words."
We find no error in the record prejudicial to defendant. The judgment of the trial court should be affirmed.
The foregoing opinion was prepared by Retired Circuit Judge LEIGH M. CLARK, serving as a judge of this Court under the provisions of § 6.10 of the Judicial Article (Constitutional Amendment No. 328); his opinion is hereby adopted as that of the Court. The judgment of the trial court is hereby
AFFIRMED.
All the Judges concur.