**William OMANS, Appellant (Defendant Below),**

v.

**STATE of Indiana, Appellee (Plaintiff Below).**

No. 3–280A57.

Court of Appeals of Indiana, Third District.

Nov. 19, 1980.

Richard K. Muntz, Richard K. Muntz, P. C., LaGrange, for appellant.

Theodore L. Sendak, Atty. Gen., Palmer K. Ward, Deputy Atty. Gen., Indianapolis, for appellee.

HOFFMAN, Judge.

Following a jury trial, defendant–appellant William Omans was convicted of two counts of child molesting, IC 1971, 35–42–4–3(c) (Burns 1979 Repl.), and sentenced to consecutive five–year terms.

His appeal raises two issues:

(1) whether there was sufficient proof of penetration to support the convictions; and

(2) whether it was error to admit testimony regarding his prior sexual conduct.

▉ Defendant maintains that the evidence was insufficient to sustain his convictions because there was no proof of penetration. The statute under which defendant was convicted provides:

"(c) A person sixteen [16] years of age or older who, with a child twelve [12] years of age or older but under sixteen [16] years of age, performs or submits to sexual intercourse or deviate sexual conduct commits child molesting, a class C felony. However, the offense is a class A felony if it is committed by using or threatening the use of deadly force, or while armed with a deadly weapon."

IC 1971, 35–42–4–3(c).

IC 1971, 35–41–1–2 (Burns 1979 Repl.) defines sexual intercourse as "an act that includes any penetration of the female sex organ by the male sex organ." Since the charge did not involve deviate sexual conduct, penetration, no matter how slight, is an essential element of the crime of child molesting. Whether or not penetration has occurred is a question of fact to be determined by the jury. *Hall v. State* (1975), 166 Ind.App. 55, 333 N.E.2d 913.

Defendant was charged with sexually molesting his stepdaughters, Debbie and Mary. With respect to the alleged act of intercourse with Debbie, she testified on direct examination as follows:

"Q. Would you tell the ladies and gentlemen of the Jury what happened?

"A. He laid me on the bed. He said that it wasn't gonna hurt, and I just laid there and closed my eyes, and he said when he got done he stuck his finger up inside of me, and he said when he got done, he told me to go get him a wet wash cloth, and white stuff was coming out, and he said that never to let any young boys put that inside me because that's what caused babies.

"Q. During any point in time did you feel any pain?

"A. Yeah.

"Q. Before his finger was put inside of you was anything else put inside you?

"A. I don't know. I never looked.

"Q. Did he say anything about whether or not anything was put inside you?

"A. Yeah.

"Q. What did he say?

"A. He said that it was inside me.

"Q. Did you know what he was referring to when he said it was inside you?

"A. Yeah.

"Q. What was he referring to? Can you say it, Debbie?

"A. No.

"Q. Why not?

"A. Cause.

"Q. Do you know what I mean by the word penis?

"A. Yeah.

"Q. Is that what he was referring to?

"A. Yeah."

On cross–examination she stated:

"Q. And you said that you didn't look to see what he had in you, but you said he had his finger in you?

"A. (inaudible)

"Q. You don't know what he had in you? Well, do you remember saying in that statement, when Mrs. Waldron asked you, 'Did you actually have sex?' and you said, 'Well, I never seen him because I just closed my eyes, but he said he had it in me.' Do you remember saying that?

"A. Yeah.

"Q. And is that what he said to you, 'I have it in you.'?

"A. Yeah.

"Q. Did he say what he had in you?

"A. No.

"Q. O.K. You just–when Mr. Yoder asked you if he had his penis in you, you're assuming that's what he had in you?

"A. Yeah.

"Q. But you didn't look?

"A. No.

"Q. When Mr. Yoder asked you today was that the first time you've ever heard the word penis?

"A. No.

"Q. Had you ever talked with your sisters about the things to know what about sex and things?

"A. No.

"Q. Did you ever talk to your mom about it?

"A. No.

"Q. Who did you talk with to find out about these things?

"A. I just heard the word. I don't know where I heard it.

"Q. Could you have heard it at school?

"A. Yeah.

"Q. But you don't know what the word means?

"A. I do now.

"Q. You do now. What does it mean? (a long pause) You don't know what it means, or you do know?

"A. I do know.

"Q. Would you tell us what it means to you then?

"A. I don't know how to put it."

Defendant claims this testimony fails to show that his sex organ penetrated her sex organ insofar as she did not see his penis enter her vagina. He suggests that the evidence merely reveals that he put his finger somewhere inside her.

This contention is unavailing. As noted in *Baldwin v. State* (1973) 59 Wis.2d 116, 207 N.W.2d 630, at 634:

"Penetration may be proved by means other than an account based on visual observations. The Arkansas Supreme Court, in *Needham v. State* (1949), 215 Ark. 935, 990, 224 S.W.2d 785, 788, rejecting a similar argument, stated:

'... If it were necessary that this element of rape be proved in every case by an eye–witness, the accused could not ordinarily be convicted if the prosecutrix' vision had been obscured by darkness, unconsciousness or any other cause. But that is not the law; penetration, like other facts, may be proved by means other than an account based on visual observation....'"

*See also Moore v. State* (1974) 23 Md.App. 540, 329 A.2d 48.

█ Clearly Debbie was reluctant to express the incident in all its sordid details. In fact she admitted that she was embarrassed about testifying. Particularly relevant in this regard is the following quotation from *Bradburn v. State* (1904), 162 Ind. 689, at 689–690, 71 N.E. 133, at 133:

"The first question presented is whether there was sufficient proof of penetration. Section 1875 Burns 1901 provides: 'In prosecutions for the offense of rape, proof of penetration shall be sufficient evidence of the commission of the offense.' We do not deem it necessary to exhibit the evidence in detail. There was an indefinite question asked the prosecuting witness as to the act of appellant with reference to the matter of penetration. From her answer to such question, coupled with her testimony as to the other acts of appellant, and as to his declaration as to his purpose, we think that it was competent for the court, to whom the cause was submitted, to find that there was penetration. In fact, such inference, in view of the answer referred to, was the only one which would reasonably comport with the details of appellant's conduct toward her as testified to by said witness. There is a natural tendency upon the part of both counsel and witness, prompted by a sense of the fundamental proprieties of the occasion, to deal with a matter of this kind in other than unambiguous terms. Sitting here, one [sic] remove [sic] from the trial, we cannot say that the judge who tried the cause was not at liberty to draw an inference which as a man he could hardly fail to adopt as to the meaning which the witness' words were intended to convey."

In view of all the circumstances surrounding her testimony, the inference to be drawn is that defendant's male sex organ penetrated Debbie's female sex organ. *Lindsey v. State* (1971), 257 Ind. 78, 272 N.E.2d 458. *Cf.: People v. Vicencio* (1945) 71 Cal.App.2d 361, 162 P.2d 650 (testimony that prosecutrix did not know whether or not there had been actual sexual penetration but that she felt some pain partly in the inside and partly on the outside and that immediately after commission of the act defendant indicated to her that he had experienced seminal emission held sufficient); *People v. Graham* (1978) 60 Ill. App.3d 1034, 18 Ill.Dec. 26, 377 N.E.2d 179 (defendant put "thing" into her vagina); *State v. Ragland* (1952) 173 Kan. 265, 246 P.2d 276 (defendant put his "dick" halfway in her, other defendant stuck his "rhubarb" in her); *Faulkner v. State* (1965) Tex.Crim.,

390 S.W.2d 754 ("fuck" recognized as synonymous with penetration, defendant put "peter" in her private parts); *Blackmon v. State* (1920) 87 Tex.Crim. 173, 220 S.W. 93 (defendant did get "it" in once a little).

Concerning sexual intercourse between defendant and Mary, she related:

"Q. Then what happened?

"A. Then he told me to go in the bedroom, and he went and got the vaseline in the bathroom. And then he just went all the way.

"Q. All right. Now, turning your attention to December 18, Mary, from what you just testified about, where did this occur at?

"A. In his bedroom.

"Q. Is there a double bed or a single bed there?

"A. Single.

"Q. Did you have all of your clothes off?

"A. Yes.

"Q. Did you take them off yourself?

"A. Yes.

"Q. Why did you take your clothes off?

"A. Because I was scared. He told me too.

"Q. Did he have all of his clothes off?

"A. Yes.

"Q. All right. You've testified, quote, 'All the way.' Do you know what I'd be referring to if I would use the word penis?

"A. Yes.

"Q. Would that be what is sometimes referred to as the male sex organ? O.K. You don't understand the words I'm using, do you?

"A. No.

"Q. Do you think you understand what I'm saying if I use the word penis?

"A. I think so.

"Q. All right. Would you understand what I am saying if I use the word vagina?

"A. No.

"Q. All right. Could you tell the jury in your own words, as best you can, what you mean when you say he went all the way?

"A. He put his penis all the way in me.

"Q. Inside your body?

"A. Yes.

"Q. Did he do this on December 18, 1979?

"A. Yes."

In reference to this testimony defendant insists that use of the expressions "all the way" and "inside your body" are too equivocal to be equated with penetration.

■ The law does not require that proof of penetration be in any particular form of words. *State v. Moorer* (1963) 241 S.C. 487, 129 S.E.2d 330; *State v. Bowman* (1950) 232 N.C. 374, 61 S.E.2d 107. For example, in *Edmonds v. State* (1980) Ala.Cr.App., 380 So.2d 396 the sufficiency of evidence as to penetration was disputed. There the complaining witness testified to the following:

" 'Q. And did you see any private parts of his body when he was raising up from you?

" 'A. Yes.

" 'Q. Now, did his body actually penetrate your body?

" 'A. Yes.'

"On redirect examination, she testified:

" 'Q. And you testify that you passed out. Again, this is important. Did his body actually penetrate your body?

" 'A. Yes.' "

380 So.2d at 398.

In affirming the conviction, the court opined:

"It is unfortunate, we think, that there was not more specificity in the questions asked the witness on the subject of penetration, which is an essential element of the crime of rape. It is to be recognized, however, that there is considerable tenuity involved in expressing the particular part of the body of the man that must penetrate and that of the woman that must be penetrated in order to consummate the crime. If it was not such part of either, the crime was not committed. Notwithstanding our dissatisfaction with

the lack of definiteness in the language used, it would not seem reasonable to conclude that by the use of the word 'body' any part of the body of the defendant or the victim was meant, or understood, other than the essential respective parts, when all of the circumstances presented by the evidence and indicated above are shown, as to which there is a natural reluctance to repeat or to express in great detail.

"We find no case directly in point, and none is cited, that would be applicable to the unique language used as to 'penetration,' but we refer to the cases that hold that penetration 'need not be proved in any particular form of words, and circumstantial evidence will suffice.' *Beckley v. State*, Ala.Cr.App., 353 So.2d 542, 544 (1977), with authorities cited. It seems to follow necessarily that also the nature of the penetration that is essential 'need not be proved in any particular form of words.'

"We find no error in the record prejudicial to defendant. The judgment of the trial court should be affirmed."

380 So.2d at 398.

■ The reasoning of the *Edmonds* court seems persuasive here as well. Mary's testimony was to the effect that defendant inserted his penis inside her "body." From the content in which this statement was made, it is apparent that use of the term "body" did not refer to any bodily orifice but only to her sex organ. Moreover, the jury was entitled to draw upon its everyday experience in concluding that the vernacular expression "all the way" as used by Mary meant sexual intercourse. Although she had a limited sexual vocabulary Mary clearly established what happened to her. To hold otherwise would involve reweighing the evidence.

■ Defendant also advances the argument that since both complaining witnesses testified in conclusory terms as to the alleged acts of intercourse such testimony was insufficient to prove penetration because there was no foundation stated pertaining to the extent of the witnesses'

knowledge on sexual matters. To underscore this line of attack defendant relies on *Riggs v. State* (1956), 235 Ind. 499, 135 N.E.2d 247. There the only evidence on penetration was the prosecutrix's affirmative response to the prosecutor's query whether she had sexual intercourse with the defendant. The court observed:

"This statement was the sole direct testimony that appellant committed the crime of rape. There is no evidence that this 12 year old witness understood the legal significance of 'sexual intercourse' or what particular acts, including penetration, were necessary to constitute 'sexual intercourse' as the crime of rape. No details whatever were stated with reference to the acts comprising the conclusion of the witness.

"Although we are not unmindful that by reason of the nature of the details there is a natural reticence for a child of such age to speak out in detail, still the delicacies of the situation should not be permitted to outweigh the fact that a man's liberty and reputable life is at stake. The consequential embarrassment is a small price to pay in return for a showing of the witness' understanding of the details upon which such conclusion may be properly or improperly based. A child of 12 is not competent to give her conclusion of 'sexual intercourse' without showing her understanding of details supporting such conclusion, while at the same time a more mature person with more knowledge of such matters might be qualified. *Flinn v. State*, 1919, 188 Ind. 531, 124 N.E. 875."

135 N.E.2d at 249.

The rule of law to be gleaned from *Riggs* is that in order for a twelve–year–old witness to offer her conclusion that "sexual intercourse" occurred the record must demonstrate she understood the meaning of the term.

■ While Debbie could not define the word "penis" she did state that she knew what the prosecutor meant by the term. Moreover she related that defendant told her "never to let any young boys put that

inside me because that's what caused babies." Obviously she understood the nature of the act. *See, Lacy v. State* (1978), Ind. App., 375 N.E.2d 1133. That Mary comprehended the meaning of sexual intercourse appears from her testimony that defendant stopped having sex with her once her mother hinted that Mary might be pregnant. Defendant places much emphasis on Mary's inability to understand the word "vagina" but this fact is of no consequence. The unfamiliarity of a young victim with anatomical terms does not make her incompetent to testify against the perpetrator of the offense when the facts are explained in simple or childlike language which the judge and jury can understand. *State v. Johanson* (1976) La., 332 So.2d 270.

The record in the instant case reveals a description of the incidents in a style and manner appropriate to children of their respective ages.[1] While neither witness used a sophisticated vocabulary this is not required nor to be expected. They were capable of being understood by the jury.

It is next urged that the court erred in admitting testimony by Mary and her sister, Lori, as to prior sexual acts by defendant. He submits that this evidence was too remote and was introduced solely for the purpose of inflaming the passions of the jury.

Mary testified that on Good Friday of 1978 defendant threatened to whip her for stealing some money from him. In order to administer the punishment he ordered her to pull her pants down and she complied. But instead of whipping her he began to "feel her out" and asked whether she would have sex with him. Even though she refused he nevertheless "went all the way."

Lori testified that once when she and defendant were alone he began fondling her breasts and inquired whether she would like to touch his penis. However she rebuffed his advances. Her recollection was that this incident occurred about six years prior to trial. On another occasion defendant ordered Lori to undress and spread her legs apart. When he attempted to have intercourse with her, she resisted to such an extent that he was unable to accomplish the act. Lastly she stated that defendant once inserted a brush handle inside her.

■ Generally, evidence of criminal activity other than that charged is inadmissible on the question of guilt. *Cobbs v. State* (1975), 264 Ind. 60, 338 N.E.2d 632. Yet it is now settled that such evidence is freely admitted to show depraved sexual instinct when sodomy, incest or a similar offense is charged. *Gilman v. State* (1972), 258 Ind. 556, 282 N.E.2d 816. The basis for this exception is that in prosecutions for depraved acts the complaining witness is not likely to be believed inasmuch as the evidence standing alone and entirely unconnected with anything which led to or brought it about would appear unnatural or improbable in itself. *Grey v. State* (1980), Ind., 404 N.E.2d 1348. Thus acts tending to indicate a depraved sexual instinct are admissible subject only to exclusion for remoteness. *Bowen v. State* (1975), 263 Ind. 558, 334 N.E.2d 691.

In *Grey v. State, supra,* the defendant was charged with raping the three–year–old daughter of his girlfriend. It was borne out at trial that he had previously molested the young daughter of a former girlfriend. In response to his assertion that such evidence was inadmissible because the child was not raped, it was held that the evidence fell squarely within the depraved sexual instinct exception and was therefore admissible.

■ Likewise all of the disputed testimony, except for that concerning defendant's unsuccessful attempt at intercourse with Lori, came within the purview of the depraved sexual instinct rule inasmuch as the acts constituted child molesting. The excepted testimony was nonetheless properly admitted on the basis that it demonstrated a course of conduct on the part of defendant to arouse or satisfy his sexual desires.

1. Debbie was twelve years old at the time of trial and Mary was fourteen.

Nor was any of this evidence too remote. The fact that one incident occurred nine months before trial and another nearly six years prior thereto only affects the weight of the evidence. Again *Grey v. State, supra,* is controlling:

"Detective Staub testified that the defendant also talked of having been involved in an incestuous relationship several years prior to this offense. Defendant contends that the admission of this testimony was erroneous and argues that, due to his age at the time of the occurrence, the act was not a criminal one and also that it was too remote in time to be relevant.

"While the defendant is correct that he could not have been convicted of a criminal offense, we nevertheless believe that the incident came within the purview of the above discussed exception to the general rule regarding the admission of evidence of other acts. We also note that the trial court has wide discretion regarding the exclusion of evidence for remoteness. *Austin v. State* [(1974) 262 Ind. 529, 319 N.E.2d 130] *supra.* That substantial time had passed goes to the weight of the evidence but does not render it inadmissible. *See, Garr v. State* (1967), 248 Ind. 295, 227 N.E.2d 171." 404 N.E.2d at 1353.

For the reasons stated, the judgment of the trial court is affirmed.

Affirmed.

GARRARD, P. J., and STATON, J., concur.