ENGLISH WALKER *v.* STATE OF TENNESSEE.

(*Knoxville,* September Term, 1954.)

Opinion filed December 16, 1954.

JOHN A. ARMSTRONG, of Greeneville, for plaintiff in error.

JACK WILSON, Assistant Attorney General, for the State.

MR. JUSTICE BURNETT delivered the opinion of the Court.

Walker was indicted, tried and convicted for violating the age of consent statute, Code Section 10786, and was sentenced to not more than 5 years in the State penitentiary. From this conviction he appeals and has assigned numerous errors which will hereinafter be considered.

■ Let us first notice that in the bill of. exceptions that the order of January 18,. 1954 respiting the jury the following day lists one of the jurors as ''Joe M. Dawson'' while the order entering the verdict of the jury lists the juror as ''Joe M. Davison.'' Obviously this is a clerical error. The State has secured and offered in the record certified copies of these two orders which were .filed herein on October 7, 1954 in which it is shown that is purely a clerical error and this juror is listed in both orders as ''Joe M. Dawson.''

According to the State's proof, the plaintiff in error was about fifty-eight years of age and formerly employed a twelve-year-old girl by the name of Retha Griffith in his small store and barber shop at Johnson City. This girl worked around there for some two or three months (her family living within two or three blocks of this small store) when her family moved to Greeneville. Shortly after the family moved to Greeneville the plaintiff in error, Walker, wrote the Chief of Police of Greeneville and asked him to locate this girl's whereabouts. As a result of this letter the Greeneville police wrote Walker where the girl lived in Greeneville. The indictment and conviction in the present case arose by reason of acts committed in Greene County, near Greeneville. After moving from Johnson City to Greeneville and after Walker had learned where the girl lived, he wrote her and she in turn wrote him. These letters and the statements of both Walker and the girl jibe and show without a peradventure of a doubt that Walker gave her many small presents after he learned of her whereabouts in Greeneville in addition to small sums of money. On one or two occasions he sent her enough to pay her bus fare for her to come to Johnson City to visit him, at which time he admits that she slept in the same room with him. He

likewise admits that he visited her and her family in Greeneville at the time the alleged acts for which he was convicted were committed.

On the occasion in question out of which the indictment grew, Walker drove from Johnson City to Greeneville where he met this little girl at a bus station. The two then got into his automobile and rode out the highway beyond Tusculum College and parked. According to Retha's testimony, she and the plaintiff in error got on the back seat of the automobile and she removed her panties. The plaintiff in error got on top of her and made an effort to insert his penis. She testified "* * * I told him to take it out because it hurt me. * * * Well, he took it outside of my body until he got through".

The two then drove into Greeneville and out another road to the little girl's home where they saw her father and mother and then he took her to a restaurant and as he says bought her a "steak dinner".

After the dinner Walker again drove his automobile with the little girl out to the same spot where they had parked before dinner and there they again stopped and parked. The child testifies that the plaintiff in error again undertook to have intercourse with her but withdrew his penis when she complained of the pain.

When we read the testimony of Walker, who took the stand in his own behalf, he agrees with all the statements the little girl made about where they went and parked and about going before and after dinner and everything jibes with her statements except the fact that he denies having intercourse with her. He does admit that he kissed her, etc., but denied having intercourse with her.

The State called as a witness a Greeneville physician and this doctor testified that he made an examination of the girl and that because of her female organs he was

of the opinion that she had not had intercourse with a normal, adult male. After the doctor had testified he made an examination of the plaintiff in error and from this examination testified that the plaintiff in error was a normal, adult male and that because of the size of his penis, no entry had been made.

Walker likewise introduced a number of character witnesses and also his former wife (they had been divorced several months prior to this incident) who testified that Walker had been incapable of having sexual intercourse for a period of almost ten years.

As above said Walker in his testimony practically concedes everything that the little girl has testified about except the fact of their having intercourse. He admits her visits to Johnson City where they slept in the same room and that he lay on the bed with her for a while, in other words from his whole testimony one would certainly conclude that he slept with her there. He admits everything that happened on the road out of Greeneville except the intercourse. He insists of course that he merely kissed her on the cheek or as he calls it, jaw, and talked to her about her school work. He does admit though that when he drove to Greeneville to see her on this occasion that he gave her several pieces of cheap jewelry as a present.

Of course it is perfectly obvious from the fact that Walker was convicted that the jury accepted the State's theory of the case and found Walker guilty as charged.

■ The first three assignments of error are that the greater weight of the evidence preponderates against the verdict of the jury. After a careful reading and a study of the evidence we are convinced that these assignments are without merit. As said above there was evidence pro and con but the jury were well warranted in accepting

the State's evidence and the State's theory. It seems to us that from the argument before us and the brief that the basis of these assignments is the testimony of the doctor who testified in the case. As before said he testified that in his opinion there had been no penetration. This doctor though did not say and would not say that there had not been a partial penetration. As to this question all he could say or did say was "that I could not determine, sir." This argument though is to us as it was to the jury, who heard the doctor's testimony as well as the little girl's and the man and the others, the jury believed that under the law as given them that there had been a partial penetration. Singularly there is no question made as to corroboration—normally that is obviously one of the principal questions raised in a case of this kind, but in view of the evidence in this record no such question could be made here because of the admission of the plaintiff in error and the showing of where the parties were and what they did on various occasions.

It seems to us from reading this record that the only conclusion which could be drawn from the testimony of the little girl, the man and the doctor, was that the plaintiff in error did make a partial entry, and that the partial entry caused such pain that he was forced to desist from his effort even though he did have an emission on the outside of and while in contact with the outer body of the little girl.

The fourth assignment of error is that the trial judge erred in overruling the motion to quash the indictment on the ground that the indictment showed on its face that only one witness testified before the grand jury and that this witness could not have had any personal knowledge of the offense.

The burden of this assignment is the erroneous assumption on the part of the plaintiff in error that the irregularity, if any, was apparent on the face of the record, that is, on the face of the indictment, and, therefore, that a motion to quash was the proper remedy. Upon examination of the indictment it seems that and we find that some seven or eight witnesses were summoned to appear before the grand jury. There is nothing to indicate how many witnesses appeared before the jury or what knowledge any witness had.

■■ Of course it is well settled that where an irregularity does not appear on the face of the technical record, the proper procedure is to file a plea in abatement. Here the irregularity, if any, did not appear on the face of the record, and the motion to quash was not the proper remedy. Even if we assume that the indictment showed on its face that only one witness testified before the grand jury, the technical record would not indicate the knowledge of, and the testimony given, by that one witness. It seems that a plea in abatement would be required to raise the issue.

■ It seems too that for another reason this assignment should be overruled. The minutes of the court show that at the time the motion to quash was made, a plea of not guilty had already been entered. Very recently we held, *Mendolia* v. *State,* 192 Tenn. 656, 667, 241 S. W. (2d) 606, 611, that:

"It is settled law in this State that a plea in abatement may not be filed in any criminal case while the plea of the general issue of 'not guilty' is in effect."

This record clearly shows that the motion to quash was improper and even if a plea in abatement had been filed it would have come too late. The result is that this assignment is likewise overruled.

460

■ The fifth assignment complains of the admission of evidence showing that the little girl spent two nights in an adjoining county, Johnson City, with the plaintiff in error. We think that this question was answered by this Court many years ago in the case of *Sykes* v. *State,* 112 Tenn. 572, 82 S. W. 185.

■ In assignment number 6, complaint is made of the refusal of the trial judge to charge special requests as follows:

"I further charge you that the offense of 'an assault with intent to commit a felony' or 'an assault with intent to commit the offense of violating the Age of Consent' is not included in or covered by the indictment in this cause."

It seems to us that in view of the verdict of the jury in finding Walker guilty of violating the age of consent as charged in the indictment that this assignment is without merit likewise.

■ The seventh assignment of error insists that the plaintiff in error was prejudiced by the action of special counsel for the State in asking character witnesses, on cross examination, as to his reputation at Jonesboro. In the first place the objection of counsel to these questions was sustained. Of course such questions were asked in an effort to ascertain what knowledge the witnesses had of the reputation about which they were testifying. Character witnesses in a criminal case may be cross examined as to specific acts and conduct of the defendant in order to test the accuracy and credibility of the witness. *Tucker* v. *State,* 149 Tenn. 98, 257 S. W. 850. Thus this assignment must be overruled.

Assignment number 9 is the primary basis for the appeal and contention throughout of the plaintiff in

error. In this assignment it is insisted that the trial court erred in charging the jury as follows:

"It is not essential that the proof show a full and complete penetration of the female sexual organ by the male sexual organ of the defendant, but it is necessary that the proof show a penetration to some extent, and beyond a reasonable doubt."

From our examination of the authorities it seems to us that the above is a correct statement of the law. As far as we can find, and as far as able counsel has been able to cite, there is no authority in this State directly on the question. It seems to us that the offense of violating the age of consent and rape insofar as the element of penetration is concerned are the same. The statute on which this indictment is based says that "Any person who shall unlawfully or carnally know a female * * *" over twelve and under twenty-one years of age shall be guilty, etc., of a felony. In a very recent case, "1950" the Supreme Court of North Carolina, *State* v. *Bowman,* 232 N. C. 374, 61 S. E. (2d) 107, 108, said:

"There is 'carnal knowledge' or 'sexual intercourse' in a legal sense if there is the slightest penetration of the sexual organ of the female by the sexual organ of the male. It is not necessary that the vagina be entered or that the hymen be ruptured; the entering of the vulva or labia is sufficient. G. S. § 14-23; *State* v. *Monds,* 130 N. C. 697, 41 S. E. 789; *State* v. *Hargrave,* 65 N. C. 466; *State* v. *Storkey,* 63 N. C. 7; Burdick: Law of Crime, Section 477; 44 Am. Jur., Rape, Section 3; 52 C. J. Rape, Sections 23, 24."

This statement from the North Carolina Supreme Court is clearly in line with the overwhelming weight of modern authority. We think that unquestionably it is sound and adopt it as the rule applicable in Tennessee.

462

It will thus be seen that the charge above quoted was in accordance with this well recognized rule.

 We have said in innumerable cases where there is evidence pro and con on the subject, the jury having the opportunity to see and hear the witnesses testify and observe their demeanor on the stand that then the finding of the jury on these disputed questions of fact is binding on us unless we conclude that the evidence preponderates against such findings. And too it is a familiar principle in all of our authorities that the finding of the jury on the statements of these witnesses, that by such finding, the jury fixes the credibility of the witnesses. We certainly do not think that there is any preponderance against the finding of the jury on this question that there was at least a partial penetration (the plaintiff in error substantially admits everything except the attempt) and we after a careful reading of the evidence are convinced that the jury was correct in its conclusion.

The judgment below must be affirmed with costs.