Phillip C. WARRICK, a/k/a P.C. Warrick, Appellant (Defendant Below),

v.

STATE of Indiana, Appellee (Plaintiff Below).

No. 32A04–8811–CR–394.

Court of Appeals of Indiana, Fourth District.

May 22, 1989.

Linley E. Pearson, Atty. Gen., Amy Schaeffer Good, Deputy Atty. Gen., Indianapolis, for appellee.

Gary L. Wood, Howard & Lawson, Danville, for appellant.

CHEZEM, Judge.

## Case Summary

Defendant–Appellant, Phillip C. (P.C.) Warrick, appeals his conviction on three (3) counts of Criminal Deviate Conduct, a Class B felony, and three (3) counts of Child Molesting, a class D felony after a trial by jury. We reverse in part and affirm in part.

## Issues

I. Whether the trial court erred by not granting the defendant's motion for judgment on the evidence, in whole or in part, at the close of the State's case.

II. Whether the verdict, and subsequent judgment, was based upon sufficient evidence.

III. Whether the actions of the prosecutor at trial constituted prosecutorial misconduct and requires reversal.

IV. Whether the defendant was denied effective assistance of counsel.

## Facts

Defendant, P.C. Warrick, lived on the grounds of a wrecker yard to watch over the premises for the owner. The victim, age 12 at the time of the incident, befriended Warrick and performed odd jobs for him at the wrecker yard. The victim was in the sixth grade at the time of trial and had been retained one year in school.

Warrick allegedly gave the victim beer on occasion, and on approximately July 1, 1987, he gave the victim two beers; Warrick denies ever giving beer to the victim. Subsequently, the two went into Warrick's sleeping room and watched television. While the victim was watching television, Warrick began fondling the victim's genitals through his clothing. Then Warrick pulled the victim's pants down and Warrick placed his mouth upon the victim's penis and placed his finger into the victim's anus.

Approximately five to seven days later, the same sequence of events took place. There is no evidence that Warrick gave beer to the victim immediately prior to this incident. Approximately one week later the same sequence of events took place again, except that instead of inserting his

finger into the victim's anus, Warrick inserted his penis into the victim's anus. Again, there was no evidence that Warrick gave beer to the victim immediately prior to this incident.

On February 4, 1988, the victim discussed the incidents with the school's assistant principal, Katherine Isenhour. Isenhour subsequently contacted the Brownsburg Police Department. After an investigation Warrick was arrested and charged with three (3) counts of Criminal Deviate Conduct, a Class B Felony, and three (3) counts of Child Molesting, a Class D Felony.

On May 23, 1988, Warrick was tried by jury and found guilty on all six (6) counts. On June 21, 1988, Warrick was sentenced to three (3) ten (10) year terms on the Criminal Deviate Conduct counts, to be served concurrently, and three (3) two (2) year terms on the Child Molesting counts, also to be served concurrently. The court ordered that the ten (10) year terms and the two (2) year terms be served consecutively for a total sentence of twelve (12) years.

### Discussion and Decision

### I

Warrick argues that the State did not prove a prima facie case on the Criminal Deviate Conduct counts. The statute defining the offense of criminal deviate conduct reads in pertinent part as follows:

35–42–4–2. **Criminal deviate conduct.**—A person who knowingly or intentionally causes another person to perform or to submit to deviate sexual conduct[1] when:

(1) The other person is compelled by force or imminent threat of force;

(2) The other person is unaware that the conduct is occurring; or

(3) The other person is so mentally disabled or deficient that consent to the conduct cannot be given; commits criminal deviate conduct, as class B felony.

There is no evidence that the acts were compelled by force, or threat of force, or that the victim was unaware that the conduct was occurring. Thus, only part (3) of the statute is implicated in this case.

Warrick relies upon *Douglas v. State* (1985), Ind.App., 484 N.E.2d 610, which states that youth alone does not render the victim "so mentally disabled or deficient that consent to the conduct cannot be given," absent a showing of sub-normal intelligence. The State counters that there was evidence that the victim was not of normal intelligence; the victim had been retained one year in school.

█ The statute requires that the deficiency be of the nature that consent cannot be given. On page 88 of the record, the trial court states as follows:

For the record, Court specifically finds that a 12 year old boy may not voluntarily submit himself to fellatio from a 46 year old man as to make it a defense to any of defendant's conduct.

For purposes of the child molesting statute, trial court is correct—consent is irrelevant. The legislature has determined in such cases that children under the age of sixteen (16) cannot, as a matter of law, consent to have sexual acts performed upon them, or consent to engage in a sexual act with someone over the age of sixteen (16). I.C. 35–42–4–3. The child molesting statute recognizes that children, because of their immaturity, are incapable of consenting to sexual behavior with adults. Such is the purpose of the child molesting statute, but not the criminal deviate conduct statute.

However the legislature did not provide that the age of the victim is to be considered in determining whether the defendant "consented" to the deviate sexual conduct. Thus, the statute may be used to charge a defendant only when deviate sexual conduct is performed upon a person,

---

1. **I.C. 35–41–1–9. Deviate sexual conduct.**— "Deviate sexual conduct" means an act involving:
   (1) A sex organ of one person and the mouth or anus of another person; or

(2) The pentration of the sex organ or anus of another person by an object.

adult or child, either by force, or threat of force or where "consent" is not possible. The third provision in the statute primarily exists to prevent abuse of persons in our society who, by reason of mental disability, are unable to protect themselves from sexual abuse. While this statute may be applied to protect children under those specific circumstances, the protections are not limited to children. The statute designed to protect children from sexual abuse, including deviate sexual conduct, is the child molesting statute. *Smith v. State* (1986), Ind.App., 497 N.E.2d 601, 607.

◼ The legislature established a two-part test for the applicability of this provision: 1) the victim must be mentally disabled or deficient; 2) such that consent to the conduct cannot be given. While the State did present evidence of the victim's retention in school, it did not demonstrate that the victim's retention was the result of sub-normal intelligence. Likewise the State did not present any evidence that any inference of "sub-normal intelligence" resulting from the retention satisfies the second prong of the test.

The State also presented evidence below that Warrick had given the victim two (2) beers immediately prior to the first incident. However, there was no evidence that Warrick had given the victim any beer prior to the next two incidents. Also, there was no evidence that the victim had become impaired to the level of "mental disability or deficiency such that consent could not be given." Thus, the State failed to present a prima facie case of Criminal Deviate Conduct and the trial court erroneously denied Warrick's Motion for Judgment on the Evidence as to counts I, II and III. Since we reverse on the Criminal Deviate Conduct counts, we do not consider Warrick's argument that the convictions of both Criminal Deviate Conduct and Child Molesting subjected him to double jeopardy.

## II

◼ Warrick next argues that the State failed to present a prima facie case of child molesting since the State presented no evidence that Warrick fondled or touched the victim with the "intent to arouse or to satisfy the sexual desires of either the child or the older person." Such an argument is without merit. Intent may be established by circumstantial evidence. *Kizer v. State* (1986), Ind., 488 N.E.2d 704, 707. Intent may properly be inferred from an actor's conduct and the natural and usual sequence to which such conduct reasonably points. *Byassee v. State* (1968), 251 Ind. 114, 116, 239 N.E.2d 586, 588.

◼ Likewise there was ample evidence to sustain the conviction on counts IV, V and VI. The uncorroborrated testimony of a child victim is sufficient to sustain a conviction of child molesting. *Maynard v. State* (1987), Ind., 513 N.E.2d 641.

## III

◼ Warrick argues that the prosecutor's conduct in the introduction of evidence constituted prosecutorial misconduct. The test to determine when such misconduct requires a mistrial is as follows:

1. the totality of the circumstances;
2. the probable persuasive effect of the misconduct on the jury's decision; and
3. whether the conduct was repeated so as to indicate a continuing effort by the prosecutor to prejudice and inflame the jury. *Mengon v. State* (1987), Ind., 505 N.E.2d 788, *reh. den.*

The alleged misconduct consisted of testimony elicited by the prosecutor from the victim and another State's witness, Sherman Milish, regarding a sexual relationship between Warrick and another adult, who apparently was mentally retarded. During the testimony of the victim, the prosecutor asked the victim a series of questions which elicited that the mentally retarded adult died by committing suicide. The evidence was objected to and the objection was sustained by the trial court.

◼ The prosecutor's line of questioning regarding the sexual relationship was proper and the testimony would be admissible under the "depraved sexual instinct" exception to the rule against admission of character evidence. That rule provides that when a person is charged with sex offenses

such as criminal deviate conduct or child molesting, evidence of similar conduct, even with persons other than the victim, offered as proof of the defendant's "depraved sexual instinct" is admissible. *Kerlin v. State* (1970), 255 Ind. 420, 265 N.E.2d 22, 25. The conduct charged here was similar in that the testimony elicited described two incidents of "deviate sexual conduct"[2] between Warrick and the adult. Since the adult was of diminished mental capacity that conduct may have been chargeable as Criminal Deviate Conduct. Therefore the testimony would have been admissible.

■ Also, while the questioning along this line was objected to during the testimony of Sherman Milish, it was not objected to when the victim was questioned earlier about the sexual relationship.[3] Thus, even if the "depraved sexual instinct" exception would not have applied, the evidence would have been admissible since it was merely cumulative of other evidence already admitted without objection.

■ While the prosecutor appropriately elicited testimony to show that the mentally retarded adult was dead, his attempt to introduce evidence that the adult had committed suicide was inappropriate—particularly since the victim did not have personal knowledge of the cause of death. However, the record reflects that the trial judge instructed the jury to disregard the testimony and the record reflects that each juror nodded that he or she could disregard the testimony and not consider it. Thus, the cautionary instruction cured any misconduct in eliciting the testimony. Likewise, since the defendant failed to move for a mistrial, he has waived the issue of whether one should be granted.

### IV

■ Warrick finally argues that he was deprived of effective assistance of counsel for four reasons: 1) trial counsel failed to object to certain prejudicial questions asked during voire dire; 2) trial counsel failed to cross-examine the two investigating officers; 3) trial counsel failed to timely object and offer proper motions to strike testimony introduced concerning the alleged sexual acts between Warrick and the mentally retarded adult; and 4) trial counsel failed to move for mistrial after the prosecutor attempted to introduce evidence of the mentally retarded adult's suicide.

The standard to be employed to determine whether there has been ineffective assistance of counsel is found in *Strickland v. Washington* (1984), 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674. The test has two parts:

1. The defendant must show that counsel's performance was deficient—such that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment.

2. The defendant must show that the deficient performance prejudiced the defense—so serious that the defendant was deprived of a fair trial, the result of which is reliable.

The questions asked of the prospective jurors by the prosecutor were not prejudicial; rather, they were intended to discover any biases that the jurors might have toward the victim. The questions were hypothetical and did not discuss facts not yet in evidence. However, even if the questions were improper it is quite conceivable that trial counsel, as a matter of trial strategy, chose not to object. Likewise, the failure to cross-examine the investigating officers at trial could have been a trial strategy, but we need not consider it since Warrick fails to demonstrate any resulting prejudice from the failure.

As discussed above, the testimony regarding the alleged sexual acts was admissible when introduced during the victim's testimony and would have been admissible during the testimony of Sherman Milish;

---

**2.** See n. 1, *supra.*

**3.** The testimony of the victim regarding the sexual relationship between Warrick and the mentally retarded adult was admitted without objection. When the questioning continued on into the adult's suicide, Warrick's counsel objected. R. at 279–282.

thus counsel's performance was not defective, nor was the defendant prejudiced.

Also discussed above, the trial court's cautionary instruction to the jury cured any misconduct by the prosecutor in his attempt to introduce evidence regarding the suicide. Thus, the failure of counsel to move for mistrial was not defective, nor was the defendant prejudiced.

Accordingly we reverse as to counts I, II and III and affirm as to counts IV, V and VI.

NEAL, J., concurs.

CONOVER, P.J., concurs in result with separate opinion.

CONOVER, Presiding Judge, concurring in result.

I concur in result. As written, IND. CODE 35–42–4–2(3) does not allow us to interpret it to include inability to consent due solely to age. I cannot believe our legislature wants to allow children under the age of 16, who are not mentally disabled or deficient, to be able to consent to deviate conduct with adults. Indeed, IND. CODE 35–42–4–3(c) provides class C felony penalties for such conduct without requiring proof the child is so mentally disabled or deficient he cannot consent. However, the plain language of 35–42–4–2(3) requires proof the inability to consent is due to mental disablement or deficiency.

Here, the local prosecutor sought the greater class B felony penalties of IND. CODE 35–42–4–2(3), then failed to prove the inability to consent required thereby. We cannot rewrite the plain language of IND.CODE 35–42–4–2(3), nor can we amend or modify the charging instrument. Those tasks are for the legislature by correcting this obvious mistake, or the local prosecutor if the statutory language remains the same.