**Forrest D. SHORT, Appellant (Defendant Below),**

v.

**STATE of Indiana, Appellee (Plaintiff Below).**

No. 49A02–8903–CR–114.[1]

Court of Appeals of Indiana, First District.

Jan. 10, 1991.

---

1. This case has been diverted from the district indicated in the cause number by direction of the Chief Judge and assigned to the writing judge November 27, 1990.

S. Sargent Visher, Choate Visher & Haith, Indianapolis, for appellant.

Linley E. Pearson, Atty. Gen., Amy Schaeffer Good, Deputy Atty. Gen., Indianapolis, for appellee.

ROBERTSON, Judge.

Forrest D. Short appeals three convictions after a trial before the bench arising out of a sexual assault committed against his five-year-old daughter, S.S. Two of the convictions are for child molesting, one as a class B (intercourse) and the other as a class C (fondling) felony. The third conviction is for incest as a class D felony. The evidence supports only one touching from which all three convictions flow.[2] Short received concurrent sentences of twenty, five, and two years respectively. Short raises two issues, neither of which constitutes reversible error.

## FACTS

The evidence most favorable to the judgment indicates that in December of 1987, Short lived in one-half of a double house. On December 12, 1987, his five-year-old daughter, S.S., stayed with him for an overnight visitation. Between 11:00 p.m. that night and 1:30 a.m. the next morning, Short's neighbors in the other half of the double and their guests heard S.S. crying in Short's half of the double. The next day,

---

2. Short has not alleged any double jeopardy error regarding his three convictions arising out of one touching. Nevertheless, we believe it is appropriate to discuss this matter briefly. The proper focus of a double jeopardy analysis must be on whether the offenses to be prosecuted and punished are the same and not whether the offenses spring from the same act or operative circumstances. *Elmore v. State* (1978), 269 Ind. 532, 382 N.E.2d 893. The fact that offenses stem from the same act merely informs the court that there is a potential double jeopardy problem. *Id.* The ultimate focus is on the identity of the offenses, not on the identity of their source. *Id.* In deciding whether double jeopardy exists, the proper focus is whether each offense requires proof of an element the other does not. *Whittle v. State* (1989), Ind., 542 N.E.2d 981.

It is well settled that one act of intercourse will satisfy a conviction for both child molesting and incest arising out of one act of intercourse. *Snider v. State* (1980), 274 Ind. 401, 412 N.E.2d 230.

Child molesting/intercourse and child molesting/fondling each have an element the other does not. The former requires proof of penetration and the latter requires the touching be accompanied by the intent to arouse or satisfy sexual desires. *Hawk v. State* (1987), Ind.App., 506 N.E.2d 71, *trans. denied.* It is also settled that child molesting/fondling is not a lesser included offense of child molesting/deviate sexual conduct and therefore, a defendant may properly be charged and convicted of both subsections of the child molesting statute. *Buck v. State* (1983), Ind., 453 N.E.2d 993. *But see* Judge Shields concurring opinion in *Hawk, supra.* Therefore, we will refrain from reversing any of Short's convictions *sua sponte.*

Short's neighbors questioned S.S. who told them that "he hurt me.... [h]e made me f---." Later, S.S. told her grandmother that "... my daddy hurt me ... he put his wiener in me and it hurt again and again."

Additional facts are supplied as necessary.

## DECISION

I. Whether S.S., the six-year-old prosecuting witness, was properly qualified to testify?

At the time this case was tried, IND. CODE 34–1–14–5 provided that children under ten years of age were not competent to testify "unless it appears that they understand the nature and obligation of an oath."[3] In *Russell v. State* (1989), Ind., 540 N.E.2d 1222, our supreme court held that the statutory presumption of incompetence is overcome when a child demonstrates 1) she understands the difference between telling a lie and telling the truth, 2) she knows she is under compulsion to tell the truth, and 3) she knows what a true statement actually is. Our supreme court held in *Russell* that the trial court abused its discretion by qualifying the witness without a sufficient foundation for the third element above. However, the court held the error was harmless because an examination of the entirety of the child's testimony demonstrated she understood what a true statement actually was.

In the case at bar, the trial court qualified S.S. upon the following testimony (pertinent part only):

Q.  ... [S.], is it a good thing or is it a bad thing to tell the truth?

A.  A good thing.

Q.  A good thing. And is it a good thing or a bad thing to tell a lie?

A.  A bad thing.

Q.  A bad thing. And what happens if you tell Mommy a lie? What does she do?

A.  She either sends me to my room or sends me to time out.

Q.  Sends you to your room, and what else does she do?

A.  Or to time out.

Q.  Or to time out. Do you get to watch T.V. if you tell a lie?

A.  No.

Q.  No. Do you get to go out and play if you tell a lie?

A.  No.

　　*　　*　　*　　*　　*　　*

Q.  Why do you think it's a bad thing to tell a lie?

A.  Because sometimes they might believe you and it won't be right.

The above testimony demonstrates that S.S. understood the difference between a truth and falsehood and that she believed that punishment follows from falsehoods. We hold the above testimony is sufficient to establish that S.S. appreciated the moral content of true and false statements and that she was under compulsion to tell the truth.

■ However, as in *Russell*, the trial court in the present case erred by failing to establish that S.S. knew what a true statement actually was. The determination of whether the witness knows what the truth actually is involves a determination of whether the witness knows the difference between truth, other connotations of truth that may not satisfy this element, and fantasy. *Id.; Jarrett v. State* (1984), Ind., 465 N.E.2d 1097.

■ However, we hold that, as in *Russell*, the error is harmless because the missing element in the preliminary determination of the witness's competency was satisfied by her later testimony. During the evidentiary phase of S.S.'s testimony, the following exchange between the prosecutor and S.S. took place:

Q.  And what did Daddy tell you? Did Daddy tell you something that wasn't true that time?

A.  Yes.

Q.  What did he say?

---

**3.** In 1990, the legislature deleted the section of I.C. 34–1–14–5 pertaining to child witnesses. P.L.37–1990, § 208. Now, all children, regardless of their age, are presumed to be competent to testify.

A. He said that it wouldn't—

Q. That it wouldn't. That it wouldn't what, honey?

A. It wouldn't hurt, but it did.

The above exchange demonstrates that S.S. could appreciate the truth/reality of pain. Therefore, the error in the qualification of S.S. is harmless. We find no reversible error.

## II. Sufficiency

Short attacks various aspects of the sufficiency of the evidence. He argues 1) the evidence is insufficient to show a penetration of S.S.'s vagina by his penis to support the two convictions based on an alleged act of intercourse; 2) the State failed to present evidence that Short committed the touching with the intent to gratify his sexual desires; and 3) no evidence was presented that Short knew that S.S. was his daughter as required to support the incest conviction.

■ In reviewing the sufficiency of the evidence, we consider the evidence most favorable to the verdict together with all reasonable inferences which may be drawn from that evidence and, if there is substantial evidence of probative value to support each element of the offense, the judgment will be affirmed. *Fox v. State* (1979), 179 Ind.App. 267, 384 N.E.2d 1159. The reviewing court neither weighs the evidence nor judges the credibility of the witnesses. *Traxler v. State* (1989), Ind., 538 N.E.2d 268. Substantive evidence of probative value, such as is necessary to support a conviction, has qualities of directness and freedom from uncertainty. *Vuncannon v. State* (1970), 254 Ind. 206, 258 N.E.2d 639. The function of an appellate court in a criminal appeal is to determine whether or not evidence of guilt is substantial and of probative value, which requires more than a mere scintilla of evidence. *Id.* Evidence which only tends to support a conclusion of guilt is insufficient to sustain a conviction, as evidence must support the conclusion of guilt beyond a reasonable doubt. *Id.*

S.S.'s testimony at trial regarding Short's sexual assault upon her reads as follows in pertinent part:

Q. Good girl. I knew you could. Did Daddy touch you in a place that hurt?

A. Yes.

Q. What do you call that, [S.]?

A. My butt.

Q. My—what?

A. My butt.

Q. Say that a little bit louder, as loud as you said yes just a minute ago. My what?

A. My butt.

Q. My butt. And where is that? Can you point? Can you point to that place on you you call your butt?

A. Yeah.

Q. Is it up here on the shoulder?

A. No.

Q. No. Is it down here on your knees?

A. No.

Q. Is it here at your tummy?

A. Kind of.

Q. Is it here at your tummy?

A. Kind of, but you have to go down a little lower.

Q. You have to go down lower. Do you go to the bathroom with your butt?

A. Yes.

Q. Is that right there between your legs?

A. No.

Q. Huh?

A. No.

Q. Tell me real loud.

A. No.

Q. Where is that, sweetie? Is that right down here?

A. No.

Q. Right below your waist? Where is that? Is that lower than your waist: Where is that, sweetie? Where is your butt?

A. It's right—

Q. Do you go to the bathroom with your butt?

A. Yes.

Q. What did you do when Daddy touched you with—on the butt?

A. I cried.

Q. What did you do?

A. Cried.

Q. You cried. Did you cry a lot or did you just cry a little bit?

A. A lot.

Q. You did cry a lot. And what did Daddy touch you with?

A. His front butt.

Q. His front butt. . . .

A doctor examined S.S. on December 14, 1987, and testified at trial as follows:

A. Well, it was that apparently on the weekend of the 12th of December of 1987, while visiting with her father, some neighbors had heard a child screaming, and,

apparently, later on [S.S.] had told her grandmother that her father had quote hurt her, and *attempted to put his penis in her quote butt.* There was some question at that point in time whether she was referring to her rectum or her vagina.

\*    \*    \*    \*    \*    \*

A. Well, the examination pretty much, except for the genital examination, was normal. The genital examination showed that [S.S.] was prepubertal, had no sexual development. There were—*There was evidence of trauma to the hymen. There were interruptions or breaks in the hymen, and in looking at the vaginal opening in the hymen* as a clock for—as reference points at one and at six and at eleven o'clock there were interruptions from what we would normally expect to see. Also, the *hymenal edges* normally are thin, the tissue is thin, edges on [S.], the edges were thickened and more rounded. This is basically consistent with trauma of some type. Also, *the opening end of the vagina, through the hymenal opening* was approximately twelve by eight millimeters on the horizontal plane, which is a little, probably about three-fourths of an inch. And this is enlarged for what we normally expect to see for a youngster her age, approximately twice as large as we would expect to see. That's pretty nearly all of the positive findings that I found at that point in time.

Q. Based on your professional expertise, Dr. Merk, in the field of child sexual abuse and pediatrics, would you say that this child's condition at the time of her examination was *consistent with the history that you obtained with regard to the alleged sexual abuse?*

A. Yes.

Q. Would you please explain your opinion to the Court?

A. Well, once again, *sexual abuse can take all sorts of forms.* The most of what I was seeing, *all of what I was seeing was pretty much trauma to the hymen,* and pretty much this meets—is almost always intentional in one way or another. Straddle injuries, fall injuries and the like generally will cause injury primarily to the outer fat folds, the labium majora, more on the outside rather than *toward the inside, toward the vagina,* as in this case. (Emphasis added.)

Short asserts the evidence is insufficient to show a penetration of S.S.'s vagina by his penis. We agree that the evidence as set out above, S.S.'s testimony and the examining physician's testimony, supports a touching—by Short's "front butt"—penetrating S.S.'s external genitalia and traumatizing her hymen, but not penetrating her vagina.

Short's class B child molesting conviction and incest conviction rest upon an act of unlawful sexual intercourse. Sexual intercourse is defined by statute, IND.CODE 35–41–1–26, as follows:

'Sexual Intercourse' means an act that includes any penetration of the female sex organ by the male sex organ.

■ First, we examine whether S.S.'s testimony that Short touched her "butt" with his "front butt" is sufficient to establish that Short touched S.S.'s sex organ with his penis. A conviction for child molesting/sexual intercourse will be sustained when it is apparent from the circumstances and the victim's limited sexual vocabulary that the victim described an act of sexual intercourse. *Omans v. State* (1980), Ind. App., 412 N.E.2d 305. The unfamiliarity of a young victim with anatomical terms does not make her incompetent to testify against a perpetrator in a prosecution for

child molestation when facts are explained in a simple or childlike language which judge and jury can understand. *Id.* To reverse a conviction for child molesting because of the young victim's considerable tenuity involved in expressing the particular part of the body of the man that must penetrate to consummate the crime constitutes a reweighing of the evidence. *Id.*

S.S. obviously has a limited vocabulary regarding sex organs and sexual matters; she was five years old at the time of the assault and six years old at the time she testified. But, we will not allow her inexperience and ignorance to provide a shield for criminal wrongdoing. In fact, the victim's immaturity as evidenced by her age is an element of the child molesting convictions and certainly an important reason child molesting is prohibited. We hold that the evidence, taken in its entirety, indicates that what S.S. described as Short's "front butt" was his penis. The medical evidence establishes that S.S.'s genetalia were touched—and not her rectum or other area that may be described as "her butt." We believe it was reasonable for the trier of fact to infer from this evidence that Short touched S.S.'s sex organ with his penis.

Next, we examine whether the evidence with regard to penetration is sufficient. To sustain convictions for child molesting and incest, proof of the slightest penetration is sufficient, and the fact finder may infer penetration from the victim's physical condition soon after the crime. *Dinger v. State* (1989), Ind., 540 N.E.2d 39. In *Dinger,* the medical evidence regarding penetration indicated there were " 'small pinpoint bruises on, around her hymen' and a 'small, superficial laceration on the side of her vagina.' " *Id.* at 40.

We note that our statute defining sexual intercourse does not require that the vagina be penetrated, only that the female sex organ be penetrated. Cases from other jurisdictions support the conclusion that the vagina need not be penetrated to support a conviction for unlawful sexual intercourse or sexual penetration. For example, in *State v. Anderson* (1986), La. App., 499 So.2d 1252, *writ denied,* the court held that any penetration, however slight, of the aperture of the female genitalia, even its external features, is sufficient to establish "sexual penetration," for purposes of rape. Also, in *People v. Karsai* (1982), 182 Cal.Rptr. 406, 131 Cal.App.3d 224, the court held that penetration of the external genital organs is sufficient to constitute "sexual penetration" to complete the crime of rape even if the rapist does not thereafter succeed in penetrating into the vagina. In *Walker v. State* (1954), 197 Tenn. 452, 273 S.W.2d 707, the court held that sexual intercourse was established by the slightest penetration of the female sexual organ by the male sexual organ, and it is not necessary that the vagina be entered or that the hymen be ruptured, but the entering of the vulva or labia was sufficient.

We are impressed with the authority from our sister states. We hold the evidence in the present case—which indicates that Short penetrated S.S.'s external genetalia with his penis—is sufficient to support Short's unlawful sexual intercourse convictions even though the evidence fails to indicate that S.S.'s vagina was penetrated. Therefore, we find no error.

Next, Short argues the State failed to establish that the touching was accompanied by an intent to arouse or gratify sexual desires as required to support the class C felony child molesting/fondling conviction. A defendant's intent to gratify sexual desires may be inferred from an intentional touching of the child victim's genital area. *Brady v. State* (1989), Ind. App., 540 N.E.2d 59. Intent for the purposes of the offense of child molesting can be properly inferred from defendant's conduct and the natural and usual sequence to which such conduct reasonably points. *Warrick v. State* (1989), Ind.App., 538 N.E.2d 952.

In the present case, we hold the fact-finder could properly infer from the fact that Short committed an act of sexual intercourse upon S.S. that he did so with

**560**

the intent to gratify his sexual desires. Therefore, we find no error.

Finally, Short argues no evidence was presented establishing that he knew that S.S. was his daughter as required to sustain his conviction for incest. He is mistaken. Short testified at trial as follows:

Q. Now, you are [S.S.'s] father, is that correct?

A. Yes, sir.

The fact finder could infer—from Short's knowledge that S.S. was his daughter during the trial—that Short knew S.S. was his daughter at the time of the sexual assault. Therefore, we find no error.

Judgment affirmed.

CHEZEM, J., concurs.

BUCHANAN, J., concurs in result with separate opinion.

BUCHANAN, Judge, concurring in result.

I concur in result in this case because I disagree with footnote 1 which in my opinion should only state that the case has been transferred from another district.