**Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



FILED

Jun 28 2013, 6:59 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT:

**KURT A. YOUNG**
Nashville, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**CHANDRA K. HEIN**
Deputy Attorney General of Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| LARRY G. BROWN, | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No. 49A02-1208-CR-657 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

APPEAL FROM THE MARION SUPERIOR COURT
The Honorable Carol J. Orbison, Judge
Cause No. 49G22-1009-FA-73763

**June 28, 2013**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**PYLE, Judge**

Larry G. Brown ("Brown") appeals, following a jury trial, his convictions and sentences for two counts of Class A felony child molesting.[1]

We affirm.

ISSUES

1.  Whether sufficient evidence supports Brown's two Class A felony child molesting convictions.

2.  Whether the trial court erred in sentencing Brown.

FACTS

Between 2006 and 2010, Brown, his wife, Mindy, and their son, J.B., lived next door to A.J. and her father. A.J. was born in February 1999; thus, she was seven to ten years old when she was Brown's neighbor. A.J. and J.B. were friends and played together every day.

In 2009, when A.J. was ten years old, she lost a ring at Brown's house when she was playing with J.B. A.J. told Brown that she lost the ring, and he told her that he would look for it. The following day, A.J. returned to Brown's house, and Brown told her that he had found her ring. Brown told A.J. that her ring was in his bedroom and instructed her to go into the bedroom. Once inside, Brown closed the bedroom door and then locked it. After A.J. complied with Brown's direction to sit on his bed, he removed her shorts and pulled off her underwear. Brown then grabbed a tube of gel from the

---

[1] Ind. Code § 35-42-4-3. Brown was also convicted of two counts of Class C felony child molesting and one count of Class D felony dissemination of matter harmful to minors but does not specifically challenge his convictions or sentences for those crimes.

window sill and rubbed some of the gel "on [A.J.'s] crotch[,]" which she testified was the part of the body "[w]here you pee out of." (Tr. 20). A.J. was laying on the bed with her legs in the air, and Brown was kneeling on the bed over her. Brown then put "his thing"—which A.J. described as "[w]here he pees out of"—"on [her] crotch." (Tr. 21). At trial, A.J. testified that she felt Brown's penis "stabbing [her] in the crotch[,]" and that "it hurt really bad." (Tr. 22). Brown tried for a few minutes but "couldn't get it in the inside." (Tr. 22). A.J. further testified that "when [Brown] tried to get it in, then it would like go the opposite way, like it wouldn't fit inside." (Tr. 58). Brown then "started just rubbing [his penis] on the outside" of A.J.'s "crotch." (Tr. 24). A.J. was eventually able to get dressed. Brown warned A.J. not to tell anyone what had happened, claiming they would both get into trouble.

On a different day, A.J. was at Brown's house playing with J.B. Brown told A.J. to go into his bedroom, and once she was inside, he locked the bedroom door. Brown told A.J. to sit on his bed, and he grabbed a vibrator from the dresser by the bedroom door. Brown removed A.J.'s shorts and underwear and "put [the vibrator] on [her] crotch." (Tr. 27). A.J. testified that the vibrator "felt weird and it hurt." (Tr. 28). A.J. asked Brown when he would stop, and he said, "In a few minutes." (Tr. 29). Brown again warned A.J. not to tell anyone or else they would both get into trouble.

On a different occasion, A.J. went to Brown's house to see if J.B. could play. After Brown had A.J. come into the house, he told her that J.B. was not home. Brown then told A.J. to go to the front room, where Brown turned on the television, sat in a chair, and told A.J. to sit on his leg. A.J. saw people on the television having sex, and she

3

asked Brown what it was. Brown replied that "it was just something that [they] needed to watch." (Tr. 33). Brown then "pulled his thing out[,]" told A.J. to put her hand on it, and "had [her] rub it" in an "[u]p and down" motion. (Tr. 33). Brown began "moaning and stuff" and "[w]hite stuff" came out of his penis. (Tr. 34). Brown used paper towels next to his chair to "[w]ipe the white stuff off[,]" and A.J. was able to leave. (Tr. 34).

On yet another occasion, A.J. went to Brown's house to play with J.B. As A.J. walked passed Brown to go to J.B.'s room, Brown stopped A.J. and said "he wanted to see if [her] boobs were growing." (Tr. 35). Brown then lifted up A.J.'s shirt, looked at her breasts, and "touched [her] boob." (Tr. 36).

In January 2010, A.J. and her father moved from the neighborhood, and A.J. started to attend a new school. A.J. told some of her friends at her new school that she had been touched inappropriately by a former neighbor. In late August 2010, child advocates from the Indianapolis Metropolitan Police Department ("IMPD") went to A.J.'s new school and presented a Good Touch/Bad Touch body safety program to the students. At the end of the program, the IMPD presenter passed out a slip of paper with the question, "Have you ever been touched on your private body parts for no good reason?" (Tr. 63). After A.J.'s friends encouraged her to disclose what had happened, A.J. circled "Yes" on the slip and gave the slip to her teacher. A.J. later spoke to the school counselor, who then contacted Child Protective Services ("CPS"). A.J. then had a forensic interview at the Child Advocacy Center and a physical examination at Riley Hospital.

4

The State charged Brown with two counts of Class A felony child molesting, two counts of Class C felony child molesting,[2] and one count of Class D felony dissemination of matter harmful to minors.[3] On July 2 and 3, 2012, the trial court held a jury trial. During the trial, A.J. testified to the crimes as set forth above. Brown testified on his own behalf and denied any inappropriate touching of A.J. Brown's wife testified and acknowledged that she had lubricant on the window sill and a vibrator in a dresser by the bedroom door. Brown's wife also testified that Brown had problems maintaining an erection and that his penis was approximately three inches long when fully erect. The jury found Brown guilty as charged.

At the sentencing hearing, Brown's attorney specifically acknowledged that Brown's sentence for his Class A felony child molesting in Count 2 would be subject to credit restricted status because the offense occurred after July 2008. The trial court found no mitigating circumstances, rejecting all of Brown's proffered mitigating circumstances.[4] The trial court found the following aggravating circumstances: (1) Brown's position of trust with the victim; (2) the multiple incidents of molestation; and (3) Brown's prior felony conviction. The trial court imposed a fifty (50) year sentence for Brown's Class A felony child molesting conviction in Count 1; a thirty (30) year sentence for Brown's Class A felony child molesting conviction in Count 2 with a credit restricted status; an eight (8) year sentence for each of Brown's Class C child molesting

---

[2] I.C. § 35-42-4-3.

[3] I.C. § 35-49-3-3.

[4] Brown proffered the following as mitigating circumstances: (1) law-abiding life; (2) undue hardship on his dependents; (3) health problems; and (4) low risk to reoffend.

convictions; and a three (3) year sentence for his Class D felony dissemination of matter harmful to minors conviction. The trial court ordered that the sentences for the two Class A felony convictions be served consecutively while the remaining sentences to be served concurrently. The trial court ordered Brown to serve his executed sentence in the Department of Correction but that the last ten (10) years be completed in Community Corrections.

## DECISION

1. Sufficiency

Brown argues that the evidence was insufficient to support his two convictions for Class A felony child molesting.[5]

> When reviewing the sufficiency of the evidence to support a conviction, appellate courts must consider only the probative evidence and reasonable inferences *supporting* the verdict. It is the fact-finder's role, not that of appellate courts, to assess witness credibility and weigh the evidence to determine whether it is sufficient to support a conviction. To preserve this structure, when appellate courts are confronted with conflicting evidence, they must consider it most favorably to the [jury's verdict]. Appellate courts affirm the conviction unless no reasonable fact-finder could find the elements of the crime proven beyond a reasonable doubt. It is therefore not necessary that the evidence overcome every reasonable hypothesis of innocence. The evidence is sufficient if an inference may reasonably be drawn from it to support the verdict.

*Drane v. State*, 867 N.E.2d 144, 146-47 (Ind. 2007) (internal quotation marks and citations omitted) (emphasis in original). Furthermore, "[a] molested child's uncorroborated testimony is sufficient to sustain a conviction." *Carter v. State*, 754 N.E.2d 877, 880 (Ind. 2001), *reh'g denied*, *cert. denied. See also Hoglund v. State*, 962

---

[5] Brown makes no challenge to his two Class C felony child molesting convictions or his Class D felony dissemination of matter harmful to minors conviction.

6

N.E.2d 1230, 1238 (Ind. 2012) ("The testimony of a sole child witness is sufficient to sustain a conviction for molestation."), *reh'g denied*.

To convict Brown of Class A felony child molesting as charged in Count 1, the State was required to prove beyond a reasonable doubt that Brown, who was at least twenty-one (21) years of age, performed or submitted to sexual intercourse with A.J., a child under fourteen (14) years of age. Ind. Code § 35-42-4-3. At the time of Brown's offense, sexual intercourse was defined as "an act that includes penetration of the female sex organ by the male sex organ." Ind. Code § 35-41-1-26 (now codified at Ind. Code § 35-31.5-2-302 (eff. July 1, 2012)).

To convict Brown of Class A felony child molesting as charged in Count 2, the State was required to prove beyond a reasonable doubt that Brown, a person who was at least twenty-one (21) years of age, performed or submitted to deviate sexual conduct with A.J., a child under fourteen (14) years of age. Ind. Code § 35-42-4-3. At the time of Brown's offense, deviate sexual conduct was defined as "an act involving . . . the penetration of the sex organ . . . of a person by an object." Ind. Code § 35-41-1-9 (now codified at Ind. Code § 35-31.5-2-94 (eff. July 1, 2012)). Here, the State specifically alleged that Brown engaged in deviate sexual conduct by inserting a "vibrating device" into A.J.'s "sex organ" or "vagina." (App. 67).

Brown contends that there was not sufficient evidence to sustain his two Class A felony child molesting convictions because there was "no evidence of penetration." (Brown's Br. 13). Specifically, Brown suggests that the evidence was insufficient

7

because A.J. did not specifically testify that his penis or the vibrator went inside her vagina and because there was no medical evidence corroborating penetration.

Our Indiana Supreme Court has held that proof of even the slightest penetration is sufficient to sustain convictions for child molesting. *Spurlock v. State*, 675 N.E.2d 312, 315 (Ind. 1996), *aff'd in relevant part on reh'g* (1997). There is no requirement that the vagina be penetrated, only that the female sex organ, *including the external genitalia*, be penetrated. *See Smith v. State*, 779 N.E.2d 111, 115 (Ind. Ct. App. 2002), *trans. denied*; *see also Short v. State*, 564 N.E.2d 553, 559 (Ind. Ct. App. 1991). A conviction for child molesting will be sustained when it is apparent from the circumstances and the victim's limited sexual vocabulary that the victim described an act which involved penetration of the sex organ. *See Short*, 564 N.E.2d at 558. "The unfamiliarity of a young victim with anatomical terms does not make her incompetent to testify when the facts are explained in simple or childlike language which [the] judge and jury can understand." *Id.* at 558–59. It is "unnecessary" and "undesirable" for a child molest victim to give a "detailed anatomical description of penetration." *Spurlock*, 675 N.E.2d at 315. Whether penetration occurred is a question of fact to be determined by the jury. *Borkholder v. State*, 544 N.E.2d 571, 577 (Ind. Ct. App. 1989).

Here, A.J. testified that, when she was ten years old, Brown rubbed lubricant on her "crotch[,]" which she testified was the part of the body "[w]here you pee out of." (Tr. 20). Brown then had A.J. lie on the bed with her legs in the air while he put "his thing"—which A.J. described as "[w]here he pees out of"—"on [her] crotch." (Tr. 21). A.J. testified she felt Brown's penis "stabbing [her] in the crotch[,]" and that "it hurt

8

really bad." (Tr. 22). She further testified that he "couldn't get it in the inside." (Tr. 22). A.J. testified that Brown "pressed hard" "when "he tried to make it go inside," but that his penis would move the opposite way and "wouldn't fit inside." (Tr. 58). A.J. testified that Brown then "started just rubbing [his penis] on the outside" of A.J.'s "crotch." (Tr. 24). A.J. also testified that, on a different day, Brown removed A.J.'s shorts and underwear and "put [the vibrator] on [her] crotch." (Tr. 27). A.J. testified that the vibrator "felt weird and it hurt." (Tr. 28).

The State also presented testimony from the doctor from Riley Hospital who conducted the sexual assault examination of A.J. in September 2010. The doctor testified that a female's external genitalia are part of the female sex organ. Although the doctor testified that A.J. had a normal physical examination, the doctor also testified that "the vast majority" of children examined will have normal examinations despite "penile/genital contact" or "vaginal penetration" because such contact does not always "leave marks" or because the contact areas can heal quickly even if an injury occurs. (Tr. 119). The doctor further testified that she did not collect any evidence during A.J.'s sexual assault examination because it was done more than ninety-six hours from the alleged incident.

We acknowledge that A.J. did not give explicit testimony specifying that Brown's penis or the vibrator "penetrated" or went "inside" her vagina or her external genitalia. Nevertheless, the specific evidence presented in this case, including A.J.'s testimony that Brown stabbed and hurt her "crotch" with his "thing" and with the vibrator supports a reasonable inference that Brown at least slightly penetrated A.J.'s external genitalia with

9

his penis and with the vibrator. Indeed, if there had been no penetration whatsoever, it is reasonable to infer that A.J. would not have experienced any pain. Again, "whether penetration, no matter how slight, occurred is a question of fact to be determined by the jury." *Borkholder*, 544 N.E.2d at 577. Here, the jury was instructed that the State was required to prove the slightest degree of penetration of the female sex organ, which included the external female genitalia. We will not reweigh the evidence or second-guess the jury's conclusion that A.J.'s sex organ was at least slightly penetrated by Brown's sex organ and by the vibrator. Finally, we reject Brown's reliance on *Spurlock*, where the evidence was determined to be insufficient to establish penetration. Here, A.J testified to facts supporting an inference of at least slight penetration of her external genitalia, and this is sufficient to support Brown's two Class A felony child molesting convictions. Accordingly, we affirm his convictions.

2. Sentencing

Brown argues that the trial court erred in sentencing him. Specifically, Brown contends that: (a) the trial court erred by failing to find mitigators; and (b) his sentence is inappropriate. We will review each in turn.[6]

a. *Mitigators*

Brown argues that the trial court erred when it rejected the following proffered mitigators: (1) law-abiding life; (2) undue hardship on his dependents; (3) health

---

[6] Brown also appears to argue that the trial court erred by finding his Class A felony child molesting conviction in Count 2 to be credit restricted. However, at the sentencing hearing, Brown's attorney specifically acknowledged that Brown's sentence for his Class A felony child molesting in Count 2 is subject to credit restricted status because the offense occurred after July 2008. Thus, any argument challenging his credit restricted status is waived.

problems, including a back injury, high blood pressure, heart condition, and diabetes; and (4) the probation department's assessment that he was at a low risk to reoffend.

Sentencing decisions rest within the sound discretion of the trial court and are reviewed on appeal only for an abuse of discretion. *Anglemyer v. State*, 868 N.E.2d 482, 490 (Ind. 2007), *clarified on reh'g*, 875 N.E.2d 218 (Ind. 2007). One way in which a court may abuse its discretion is by entering a sentencing statement that omits mitigating circumstances that are clearly supported by the record and advanced for consideration. *Id.* at 490–91. However, a trial court is not obligated to accept a defendant's claim as to what constitutes a mitigating circumstance. *Rascoe v. State*, 736 N.E.2d 246, 249 (Ind. 2000). A claim that the trial court failed to find a mitigating circumstance requires the defendant to establish that the mitigating evidence is both significant and clearly supported by the record. *Anglemyer*, 868 N.E.2d at 493.

Brown first contends that the trial court erred by failing to find a mitigating circumstance that he "led a generally law-abiding life[.]" (Brown's Br. 18). The record reveals that Brown had a criminal history, including a Class D felony theft conviction. Accordingly, we cannot say that the trial court erred by rejecting Brown's proffered law-abiding life as a mitigating circumstance. *See, e.g.*, *Robinson v. State*, 775 N.E.2d 316, 321 (Ind. 2002) (explaining that trial court properly attached no mitigating weight to defendant's criminal history consisting of one misdemeanor possession of marijuana conviction and some traffic infractions); *Townsend v. State*, 860 N.E.2d 1268, 1272 (Ind. Ct. App. 2007) (finding no abuse of discretion in trial court's refusal to find a mitigating

11

circumstance in defendant's criminal history consisting of single misdemeanor conviction for reckless driving), *trans. denied*.

Brown also argues that the trial court should have found a mitigator in the fact that he has a child. There is no requirement that a trial court find a defendant's incarceration would result in undue hardship to his dependents. *Benefield v. State*, 904 N.E.2d 239, 247 (Ind. Ct. App. 2009), *trans. denied.* As our Indiana Supreme Court has observed, "[m]any persons convicted of serious crimes have one or more children and, absent special circumstances, trial courts are not required to find that imprisonment will result in an undue hardship." *Dowdell v. State*, 720 N.E.2d 1146, 1154 (Ind. 1999). While Brown is the father of one child, he failed to show that he supported the child in any manner. Indeed, the record shows that Brown was not employed, that he received various forms of public assistance, and that he relied on his mother for additional support. Because Brown has failed to show that this proffered mitigator was significant, the trial court did not abuse its discretion by declining to find it as a mitigating circumstance. *See, e.g.*, *Anglin v. State*, 787 N.E.2d 1012, 1018 (Ind. Ct. App. 2003) (finding no abuse of discretion where evidence established that defendant's daughter was ill and that he was concerned and wished to spend time with her, but nothing indicated her degree of reliance upon him), *trans. denied*.

Brown also contends that the trial court should have considered his health issues, including a back injury, high blood pressure, heart condition, and diabetes, to be a mitigating circumstance. Brown, however, failed to cite to any legal authority supporting his contention. The trial court considered Brown's health issues but specifically rejected

12

them as a mitigating circumstance, explaining that "[t]he acts that [Brown] committed against this little girl were certainly acts that required a certain amount of movement and activity" and that Brown's alleged health issues did not "prevent[] him from committing these terrible crimes." (Tr. 308). Also, Brown did not show that his health condition would be impacted by incarceration nor did he present any evidence that his condition would be untreatable during incarceration. Accordingly, we conclude the trial court did not abuse its discretion by not finding Brown's health to be a mitigating circumstance. *See, e.g.*, *Henderson v. State*, 848 N.E.2d 341, 344-45 (Ind. Ct. App. 2006) (finding no error in trial court's refusal to consider defendant's poor health as mitigator because she failed to present evidence that her multiple health conditions would be untreatable during incarceration).

We also reject Brown's contention that trial court erred by failing to find a mitigating circumstance in the fact that he scored in the low risk category to reoffend on one of the probation department's assessment tests. Our Indiana Supreme Court has explained that scores on a probation department's risk assessment instrument "are not intended to serve as aggravating or mitigating circumstances nor to determine the gross length of sentence[.]" *Malenchik v. State*, 928 N.E.2d 564, 575 (Ind. 2010). Instead, these "offender assessment instruments are appropriate supplemental tools for judicial consideration at sentencing" and can be used by the trial court "in formulating the manner in which a sentence is to be served." *Id.* Accordingly, the trial court did not abuse its discretion in not finding his score to be a mitigating circumstance.

    b. *Appropriateness of Sentence*

13

Brown contends that his sentence is inappropriate. Specifically, he argues that his two Class A felony child molesting convictions were inappropriate because the trial court ordered them to be served consecutively and requests that this Court revise his sentence and order the imposition of concurrent sentences on these two convictions.[7]

We may revise a sentence if it is inappropriate in light of the nature of the offense and the character of the offender. Ind. Appellate Rule 7(B). The defendant has the burden of persuading us that his sentence is inappropriate. *Childress v. State*, 848 N.E.2d 1073, 1080 (Ind. 2006). The principal role of a Rule 7(B) review "should be to attempt to leaven the outliers, and identify some guiding principles for trial courts and those charged with improvement of the sentencing statutes, but not to achieve a perceived 'correct' result in each case." *Cardwell v. State*, 895 N.E.2d 1219, 1225 (Ind. 2008). Our "appellate review should focus on the forest—the aggregate sentence—rather than the trees—consecutive or concurrent, number of counts, or length of the sentence on any individual count." *Id.* Whether a sentence is inappropriate ultimately turns on "the culpability of the defendant, the severity of the crime, the damage done to others, and a myriad of other factors that come to light in a given case." *Id.* at 1224. Our sentence review under Appellate Rule 7(B) "is not to determine whether another sentence is more appropriate but rather whether the sentence imposed is inappropriate." *Conley v. State*, 972 N.E.2d 864, 876 (Ind. 2012) (internal quotation marks and citation omitted), *reh'g denied*. "It is not a matter of second guessing the trial court sentence." *Id.*

---

[7] Brown does not to challenge the appropriateness of his two Class C felony child molesting convictions or his Class D felony dissemination of matter harmful to minors conviction.

Focusing on the "forest," Brown received an aggregate eighty-year sentence for his five felony convictions. Specifically, the trial court imposed a fifty (50) year sentence for Brown's Class A felony child molesting conviction in Count 1; a thirty (30) year advisory sentence for Brown's Class A felony child molesting conviction in Count 2 with a credit restricted status; an eight (8) year sentence for each of Brown's two Class C child molesting convictions; and a three (3) year sentence for his Class D felony dissemination of matter harmful to minors conviction. The trial court ordered that the sentences for the two Class A felony convictions be served consecutively while the remaining sentences to be served concurrently. The trial court ordered Brown to serve his executed sentence in the Department of Correction with the last ten (10) years to be completed in Community Corrections.

Brown attempts to minimize the nature of his offenses against A.J. and contends that there "does not appear to have been anything about the offenses . . . that could be termed particularly grievous." (Brown's Br. 20). However, the record reveals that Brown violated his position of trust and molested A.J. on multiple occasions when she went to his house to play with his son. On one occasion, Brown lured ten-year-old A.J. into his bedroom on the ruse that she could retrieve her lost ring from the bedroom. Brown told A.J. to sit on his bed, locked his bedroom door, and then undressed A.J. Brown had A.J. lay on the bed with her legs in the air while he rubbed his penis into her "crotch." On a different day, Brown locked A.J. in his bedroom, undressed her, and used a vibrator on her "crotch." Additionally, Brown fondled A.J.'s breast when she came to

15

play with Brown's son. Finally, Brown made A.J. sit on his lap, watch a pornographic movie, and rub his penis until he ejaculated.

As to Brown's character, the record reveals Brown, who was around forty-eight years old when he molested A.J., has one felony conviction for theft, a crime of dishonesty. Brown, who was a neighbor of A.J., violated his position of trust with the young girl and molested her on multiple occasions. Brown threatened A.J. not to tell anyone, claiming that she would get in trouble if she did.

In regard to Brown's argument that his sentence is inappropriate because the trial court ordered his Class A felony child molesting convictions to be served consecutively, we disagree. "It is a well established principle that the fact of multiple crimes or victims constitutes a valid aggravating circumstance that a trial court may consider in imposing consecutive or enhanced sentences." *O'Connell v. State*, 742 N.E.2d 943, 952 (Ind. 2001). Here, Brown committed two separate Class A felony crimes of child molesting against A.J. on two different days. Additionally, the trial court found three aggravating circumstances, none of which are challenged by Brown. Thus, we conclude the trial court did not abuse its discretion by ordering Brown's two Class A felony child molesting convictions to be served consecutively.

Brown has not persuaded us that that his sentence is inappropriate. Therefore, we affirm the trial court's sentence.

Affirmed.

KIRSCH, J., and VAIDIK, J., concur.

16