Murphy SCOTT, Appellant–Defendant,

v.

STATE of Indiana, Appellee.

No. 35A05–0109–CR–395.

Court of Appeals of Indiana.

July 18, 2002.

Susan K. Carpenter, Public Defender of Indiana, David P. Freund, Deputy Public Defender, Indianapolis, IN, Attorneys for Appellant.

Steve Carter, Attorney General of Indiana, Jodi Kathryn Stein, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

## OPINION

SULLIVAN, Judge.

Murphy Scott appeals his convictions for two counts of Child Molesting, as Class A

felonies [1] for deviate sexual conduct, and three counts of Child Molesting, as Class C felonies [2] for fondling. He presents several issues for our review, which we restate as:

(1) whether the evidence was sufficient to sustain the convictions for Class A Child Molesting;

(2) whether the trial court erred in instructing the jury;

(3) whether his convictions constitute Double Jeopardy; and

(4) whether the trial court erred in sentencing.

We affirm.

The facts most favorable to the judgment reveal that during 1999 and 2000, Scott's children, T.M.S. (a daughter born on June 4, 1989), K.L.S. (a daughter born on May 25, 1991), and M.S. (a son born on April 15, 1994), were living in a foster home. During this time, the children were having unsupervised overnight visitation with Scott. During one of these unsupervised visitations around Christmas of 1999, Scott locked himself in a bedroom with K.L.S. and put his hands and head down K.L.S.'s shirt and touched her breasts. He also put his hands down her pants and put his finger in her "private." Transcript at 31. K.L.S. explained that she used the restroom with her "private." Scott rubbed his penis and also forced K.L.S. to rub her hand up and down his penis. Scott ejaculated and rubbed the semen onto his chest.

On a second occasion, Scott again took K.L.S. into a bedroom. Once again, he put his head and hands down her shirt and touched her breasts and then proceeded to put his hands down her pants and inserted his finger into her "private area." Tr. at 36. M.S. also testified that on one occasion, Scott put his hands down the front of M.S.'s pants and touched his private, which M.S. stated he used to go to the bathroom.

The jury found Scott guilty on all five counts of Child Molesting, and the trial court sentenced Scott to fifty (50) years on each of the two Class A felonies and ordered them to be served consecutively. The trial court also sentenced Scott to eight (8) years on each Class C felony and ordered the sentences to run concurrently to each other and to the sentences for the Class A felonies.

## I

### Sufficiency of the Evidence

 Our standard of review for a sufficiency of the evidence claim is well settled. We will not reweigh the evidence or judge the credibility of the witnesses. *VanMatre v. State,* 714 N.E.2d 655, 657–658 (Ind.Ct.App.1999). We will consider only the evidence which supports the conviction and any reasonable inferences which the trier of fact may have drawn from the evidence. *Id.* at 657. We will affirm the conviction if there is substantial evidence of probative value from which a reasonable trier of fact could have drawn the conclusion that the defendant was guilty of the crime charged beyond a reasonable doubt. *Id.* at 658.

 In order for a jury to properly find Scott guilty of Class A Child Molesting, the State was required to prove that Scott, a person at least twenty-one (21) years of age, performed or submitted to sexual intercourse or deviate sexual conduct with a child under fourteen (14) years of age. *See* I.C. § 35–42–4–3(a). Deviate sexual conduct is defined as, "an act involving: (1) A sex organ of one person and

---

1. Ind.Code § 35–42–4–3(a) (Burns Code Ed. Repl.1998).

2. I.C. § 35–42–4–3(b).

the mouth or anus of another person; or (2) The penetration of the sex organ or anus of a person by an object." Ind.Code § 35–41–1–9 (Burns Code Ed. Repl.1998). Proof of the slightest penetration is sufficient to sustain convictions for child molesting. *Spurlock v. State*, 675 N.E.2d 312, 315 (Ind.1996). A conviction for child molesting will be sustained when it is apparent from the circumstances and the victim's limited vocabulary that the victim described an act which involved penetration of the sex organ. *See Short v. State*, 564 N.E.2d 553, 558 (Ind.Ct.App. 1991). The unfamiliarity of a young victim with anatomical terms does not make her incompetent to testify when the facts are explained in simple or childlike language which the judge and jury can understand. *Id.* at 558–59. Also, a detailed anatomical description of penetration is unnecessary. *Spurlock*, 675 N.E.2d at 315.

■ Scott contends that the evidence presented by the State did not establish beyond a reasonable doubt that his finger penetrated K.L.S.'s "sex organ" for the purpose of establishing deviate sexual conduct. He directly attacks K.L.S.'s characterization of the part of her body which was touched and penetrated, claiming that the manner in which she discussed the committed act did not clearly establish that her "sex organ" had been penetrated.

During direct examination of K.L.S., the following colloquy took place:

"Q When he put his hands down your pants[,] what part of your body did he touch then?

A My private.

Q Your private. And so everybody is on the same page and we all know what you mean, what do you do with your private?

A Use the restroom.

Q [K.L.S.], when your dad put his hands in your pants and touched your private, did he ever put anything in your private?

A Yes.

Q What?

A His finger." Tr. at 31–32.

Scott asserts that K.L.S.'s claim, that the part of her body which was penetrated by his finger was the part of her body which she used to go to the restroom, precludes the jury from finding that he penetrated her "sex organ" with his finger. Scott claims that K.L.S.'s testimony implies that it was her urethra which was penetrated, and not her vagina. He also argues in his brief that the urethra is not considered a part of the female "sex organ." For support, he cites to *Gray's Anatomy* and several cases in which it was held that the testimony of the child did not support a conviction for child molesting because no penetration of the "sex organ" was proved. *See, e.g., Spurlock*, 675 N.E.2d at 315.

Scott correctly notes that "sex organ" is not defined by statute. However, case law has addressed the meaning of "sex organ" on several occasions. Of most direct import is the meaning which was given to "sex organ" by this court in *Short*. In *Short*, this court held that in determining whether an individual had engaged in sexual intercourse for the purpose of establishing the crimes of child molesting and incest, it was not necessary to prove that the vagina was penetrated. 564 N.E.2d at 559. Rather, this court, relying in part upon the decisions of courts in other jurisdictions, determined that the penetration of the external genitalia was sufficient to sustain a conviction. *Id.* The female external genitalia is defined as "the vulva in the female." Stedman's Medical Dictionary 641 (25th ed. 1990). The vulva is defined as "the *external genitalia* of the

female, comprised of ... the *opening of the urethra* and of the vagina." *Id.* at 1729–30. From this definition, it is clear that the opening to the urethra is located within the anatomy of a female which is referred to as the external genitalia. Therefore, any reference to the part of the female anatomy which is used to urinate also refers to the external genitalia, and consequently, to the "sex organ."

Applying the above definition to the testimony of K.L.S., the evidence is sufficient to sustain a conviction for child molesting based upon deviate sexual conduct. Upon testifying that Scott inserted his finger into her "private," and that she used her "private" to go to the restroom, K.L.S. provided information upon which the jury could determine that Scott had inserted his finger into her external genitalia. While Scott argues that this case is similar to *Spurlock*, he fails to recognize that the holding in *Spurlock* rested upon the determination that the victim did not testify that any penetration occurred, not that penetration occurred but in an anatomical part which was not part of the "sex organ." *See* 675 N.E.2d at 315. This evidence is sufficient to sustain a conviction for Child Molesting based upon deviate sexual conduct.

## II

### Jury Instructions

Instruction of the jury is left to the sound discretion of the trial court and we will not disturb the judgment of the trial court absent an abuse of discretion. *Louallen v. State*, 755 N.E.2d 672, 675 (Ind.Ct.App.2001). A party must object to an erroneous instruction before the jury retires for deliberations to preserve instructional error for review. *Id.* When the claimed error is the failure to give an

instruction, a tendered instruction is necessary to preserve error. *Scisney v. State*, 701 N.E.2d 847, 848 n. 3 (Ind.1998).

To avoid waiver of an issue, a party may claim fundamental error. *Louallen*, 755 N.E.2d at 675. The fundamental error exception is extremely narrow. *Mitchell v. State*, 726 N.E.2d 1228, 1236 (Ind.2000), *reh'g denied*. To constitute fundamental error, an error must be so prejudicial to the rights of the defendant as to make a fair trial impossible. *Id.* "The error 'must constitute a blatant violation of basic principles, the harm or potential for harm must be substantial, and the resulting error must deny the defendant fundamental due process.'" *Id.* (quoting *Wilson v. State*, 514 N.E.2d 282, 284 (Ind. 1987)).

### A. Instruction on Mens Rea

As this court held in *Louallen*, criminal intent is an element of child molesting. 755 N.E.2d at 676. We determined that the proper mens rea for the offense of child molesting is "intentionally." *Id.*[3] In *Jaco v. State*, 760 N.E.2d 176, 180–81 (Ind.Ct.App.2001), this court also addressed the different language utilized in the child molesting statute, depending upon whether an individual was charged with "fondling or touching" or for "performing or submitting to sexual intercourse or deviate sexual conduct." As we noted, I.C. § 35–42–4–3(b) explicitly requires that an individual commit the act of fondling or touching with the intent to arouse or satisfy sexual desires. However, I.C. § 35–42–4–3(a) does not contain such an explicit requirement. Instead, implicit in the use of the terms "sexual intercourse" and "deviate sexual conduct" is the requirement that the act be committed

---

**3.** The offense involved in *Louallen* was that of fondling as defined in I.C. § 35–42–4–3(b).

with the intent to arouse or satisfy sexual desires. *Jaco,* 760 N.E.2d at 181.

■ Scott claims in his brief that the jury was not instructed that the State had to prove that he intentionally committed the act of deviate sexual conduct. Scott relies upon the use of "intentionally" to also argue that he did not have the intent to arouse or satisfy sexual desires. Scott's argument seems to imply that intent constitutes only one element of this crime. However, for the purposes of proving child molesting by sexual intercourse or deviate sexual conduct, intent constitutes two separate, albeit related, elements of the crime of child molesting. *See Louallen,* 755 N.E.2d at 676.

The first intent element is that the act of sexual intercourse or deviate sexual conduct, e.g., the penetration of a sex organ by an object, must have been done intentionally. The second intent element is that the intentional act was also done with the intent to arouse or satisfy the sexual desires of the child or the older person which is implicit in the term "sexual" used in the statute. As this court alluded to in *Jaco,* the necessity for the requirement of two intent elements can be illustrated by the example of a doctor performing a medical procedure. 760 N.E.2d at 181. Following the report of a rape, a female victim is likely to be taken to the hospital to have a rape kit administered. The individual administering the procedure may intentionally take a vaginal swab to recover evidence; however, there is no intent on the part of that individual to arouse or satisfy sexual desires. Were we to require only that the act be intentionally done, this individual could conceivably be guilty under the statute. Because such a result is not desirable or within the purpose of the statute, it is necessary that the State prove that an individual: (1) performed the act intention-

ally and (2) had the requisite intent to arouse or satisfy sexual desires.

■ Based upon those requirements, we must determine whether the trial court properly instructed the jury regarding the intent element of child molesting in this case. Scott asserts that the trial court erred by failing to explicitly instruct the jury that the State was required to prove that he "intentionally" committed the acts as charged. He further contends that the trial court's reading during final instructions of the charging information, which stated that Scott "did knowingly or intentionally perform or submit to sexual intercourse or deviate sexual conduct," did not cure the defect and was also erroneous because it stated the incorrect mens rea requirement necessary to commit child molesting. Appellant's Brief at 23. Scott also argues that the trial court erred in failing to give an instruction on the definition of "intentionally," thereby preventing the jury from understanding the level of culpability required to convict.

■ We first note that Scott did not object to the instructions given. Scott also failed to propose an instruction which listed all of the elements the State was required to prove and did not propose an instruction on the definition of intentionally. Therefore, to prevail, Scott must demonstrate that fundamental error occurred.

The instructions listing the elements necessary to convict for child molesting included all five counts as set forth in the charging information. The instructions for Counts I and III, which were for the Class A felonies involving K.L.S., are identical in all respects except for a change in the dates upon which the acts occurred. The instruction for Count I stated:

"BETWEEN THE DATES OF DECEMBER 1, 1999 AND JANUARY 31, 2000, IN HUNTINGTON COUNTY,

INDIANA, MURPHY SCOTT, A PERSON AT LEAST 21 YEARS OF AGE, DID KNOWINGLY OR INTENTIONALLY PERFORM OR SUBMIT TO SEXUAL INTERCOURSE OR DEVIATE SEXUAL CONDUCT WITH A CHILD UNDER 14 YEARS OF AGE . . . ." Appendix at 83.

The trial court also gave a second instruction respecting the elements of the crime, which included a verbatim reading of I.C. § 35–42–4–3(a), the appropriate statutory language for Class A felony Child Molesting. (App. 86) The trial court also gave a separate instruction upon the intent element which stated, "The intent element of child molesting may be established by circumstantial evidence and inferred from the actor's conduct and the natural and usual sequence to which such conduct usually points." App. at 90.

From a reading of these instructions, it is clear that the jury was informed that intent was required for a finding of guilt under the statute. Also, both this court and our Supreme Court have held that it is not fundamental error to give an instruction which does not include the mens rea element if the instruction does not eliminate or prohibit consideration of intent. *Snider v. State*, 468 N.E.2d 1037, 1039 (Ind.1984); *Jaco*, 760 N.E.2d at 181. Therefore, the sole concern is not whether the jury knew that intent was required, but rather, whether the jury knew the level of intent which was required and if any error rose to the level of fundamental error. As we have previously stated, implicit in the term "deviate sexual conduct" is the requirement that the act be committed with the intent to arouse or satisfy sexual desires. From the use of this language, the jury should have recognized that any act performed by Scott must necessarily have been done in a sexual man-

ner, i.e. that Scott had an intent to arouse or satisfy sexual desires in order for the jury to find the requisite level of intent in order to convict. That said, and although perhaps desirable, it is not necessary for the trial court to give an instruction upon the separate element of "intent to arouse or satisfy sexual desires." The trial court need not repeat explicitly what is implicitly contained in the statutory language.[4] Based upon the facts of this case, no fundamental error occurred from the trial court's failure to explicitly instruct the jury upon that single intent element.

■ While the use of both "knowingly or intentionally" in the jury instruction was improper, it does not rise to fundamental error in this case. Because the jury had to determine that Scott committed the act of deviate sexual conduct, and thereby had the intent to arouse or satisfy sexual desires, the jury must have also determined that Scott intentionally committed the physical act of inserting his finger into K.L.S.'s external genitalia in order to satisfy that sexual desire.

[22] Scott's claim that fundamental error occurred because the trial court did not instruct the jury on the meaning of "intentionally" must also fail. Scott correctly asserts that "intentionally" is a term of art, requiring the trial court to give an instruction on its definition. *Abercrombie v. State*, 478 N.E.2d 1236, 1239 (Ind.1985). However, just as in *Abercrombie*, the jury was aware of the state of mind required in order to enter a finding of guilt and Scott has not shown a special prejudicial effect from the failure to give the instruction. *See* 478 N.E.2d at 1239. The State's evidence at trial reflected that Scott had the intent to arouse or satisfy sexual desires when he touched K.L.S. Also, an instruc-

---

4. However, we recognize the benefit of explic- itly instructing the jury on this intent element.

tion on the definition of "intentionally" would not have aided the jury in determining that Scott intentionally inserted his finger into K.L.S.'s external genitalia. *See McIntosh v. State*, 638 N.E.2d 1269 (Ind. Ct.App.1994), *trans. denied.*

### B. *Instruction on Use of Testimony of Victim*

Scott also challenges the trial court's giving of jury instruction 18. Instruction 18 stated, "You may convict the Defendant upon the uncorroborated testimony of the victim." App. at 100. Following the submission of instructions by the State to the trial court, Scott filed a Motion and Memorandum objecting to the giving of this instruction. Scott's counsel renewed his objection at trial, preserving it for our review. Scott asserts that the instruction is improper because it singles out the testimony of a particular witness, instructs the jury concerning the appellate standard of review which is inappropriate for jury consideration, and refers to the State's witness as the victim.

Scott notes that similar instructions have been upheld by this court and by our Supreme Court. *See Burnett v. State*, 736 N.E.2d 259 (Ind.2000); *Madden v. State*, 549 N.E.2d 1030 (Ind.1990); *Hicks v. State*, 536 N.E.2d 496 (Ind.1989); *Lottie v. State*, 273 Ind. 529, 406 N.E.2d 632 (1980); *Butcher v. State*, 627 N.E.2d 855 (Ind.Ct. App.1994). However, he asks us to carefully reconsider the propriety of giving this instruction because it is "so out-of-step with the rest of the Supreme Court's jurisprudence concerning instructions that refer only to the testimony of a single witness and tell the jury what weight to give to that witness' testimony." Appellant's Reply Brief at 14.

For support of his contentions, Scott directs us to *Myers v. State*, 510 N.E.2d 1360 (Ind.1987), for the proposition that an instruction is not automatically proper just because it contains a correct statement of the law. *See also Jacks v. State*, 271 Ind. 611, 394 N.E.2d 166 (1979). Scott also draws our attention to several cases which state that instructions which direct the jury to give special scrutiny and attention to the testimony of a particular witness should not be given. *See, e.g., Dill v. State*, 741 N.E.2d 1230 (Ind.2001); *Pope v. State*, 737 N.E.2d 374 (Ind.2000), *reh'g denied.* These cases, and others upon which Scott relies, do tend to show that an instruction which states that the jury may convict based upon the uncorroborated testimony of a victim or a witness is improper.

Indeed, in *Carie v. State*, 761 N.E.2d 385 (Ind.2002), our Supreme Court denied transfer in a per curiam opinion. However, Justice Dickson dissented from the denial of transfer upon the issue of whether it was proper for a trial court to give a jury instruction nearly identical to the instruction given in this case. As Justice Dickson wrote,

"A majority of my colleagues have decided to deny transfer in this case. There is a significant variance between the trial objection and the issues raised on appeal. Notwithstanding this concern, I would grant transfer to enable this Court to express its disapproval of the future use of such an instruction." *Carie, Id.* at 385 (Dickson, J. dissenting).

Justice Dickson then addressed in great detail the same arguments which Scott presented upon appeal in this case. *Id.* at 385–86. While Justice Dickson noted that the Supreme Court had allowed similar instructions to survive appellate review in the past, he concluded that he believed that the Court would not find such decisions to be controlling precedent in the future and would find the giving of such an instruction improper. *Id.* at 386–87. Jus-

tice Dickson's dissent seems to be a warning of an impending change in the use of a jury instruction like the one that Scott here challenges.

It is Justice Dickson's view that the instruction given by the trial court no longer seems proper in light of the other cited decisions. The instruction given in this case clearly seems to be "out-of-step" with what is now deemed appropriate for jury instructions. However, as the offensive instruction has been approved by our Supreme Court in the past, this court can do no more than state our reservation·as to its use. *See Computer Co., Inc. v. Davidson Industries, Inc.,* 623 N.E.2d 1075, 1079 (Ind.Ct.App.1993) (stating that the Court of Appeals is bound to follow the precedents established by the Supreme Court). *See also* Ind. Appellate Rule 65(A) (stating that the Court of Appeals may publish opinions which criticize existing law).

▬▬ However, even if this instruction is later found to be improper, its use in this case was harmless. Errors in the giving of instructions are harmless if a conviction is clearly sustained by the evidence presented at trial and the jury could not have found otherwise. *Dill,* 741 N.E.2d at 1233. "An instruction error will result in reversal when the reviewing court 'cannot say with complete confidence' that a reasonable jury would have rendered a guilty verdict had the instruction not been given." *Id.* (quoting *White v. State,* 675 N.E.2d 345, 349 (Ind.Ct.App.1996), *trans. denied* ).

The testimony presented by K.L.S. was compelling and provided in-depth detail of the events which took place between her and her father. T.M.S. testified that, upon one of the occasions in which the alleged

acts occurred, Scott had taken K.L.S. into a bedroom and locked the door. T.M.S. also stated that when she tried to get into the room, Scott told her to move away from the door.[5] There was also testimony presented by other witnesses which supported the testimony of K.L.S., including the playing of the cassette upon which Scott told Detective Hochstetler that he had accidentally brushed his hand across K.L.S. and felt her "vagina." Tr. at 107. Based upon the evidence, a reasonable jury could have concluded that Scott intentionally committed the acts in question with the intent to arouse or satisfy sexual desires. Therefore, any potential error in instructing the jury was harmless.

### III

### *Double Jeopardy*

▬▬ Scott claims that his convictions constitute double jeopardy because there is a reasonable possibility that the jury used the same evidentiary facts to establish the essential elements of the Class A offense in Count I and the Class C offense in Count II. Likewise, he makes the same claim for the Class A offense in Count III and the Class C offense in Count IV. Scott does not assert that the Double Jeopardy Clause was violated under the statutory elements test, but only under the actual evidence test.

▬▬ In a challenge under the actual evidence test, the appellant must demonstrate a reasonable possibility that the evidentiary facts used by the fact-finder to establish essential elements of one offense may have also been used to establish the essential elements of a second challenged offense. *Spivey v. State,* 761 N.E.2d 831, 832 (Ind.2002); *Richardson v. State,* 717

---

5. M.S. also testified that he witnessed some of the "bad touching" which took place as to K.L.S. However, his testimony lacked detail and did not support the convictions for the Class A felonies.

N.E.2d 32, 53 (Ind.1999); *Alexander v. State,* 768 N.E.2d 971 (Ind.Ct.App.2002). In applying the actual evidence. test, the reviewing court must identify the essential elements of each offense and evaluate the evidence from the jury's perspective. *Spivey,* 761 N.E.2d at 832. In our review, we consider the jury instructions where relevant, the arguments of counsel, and other factors which may have guided the jury's determination. *Id.*

The Class A felony required proof that Scott inserted his finger into the external genitalia of K.L.S. in order for the jury to find that he committed deviate sexual conduct. *See* I.C. § 35–42–4–3(a); I.C. § 35–41–1–9. The Class C felony required that the jury find that Scott had fondled or touched either K.L.S. or himself. I.C. § 35–42–4–3(b). In this case, there is no possibility that the jury relied upon the same evidence to establish the separate convictions for either of the two different episodes in which the molestation took place. In both instances, K.L.S. testified that Scott put his hands down her shirt and touched her breasts. This evidence established the essential elements of the Class C felonies. K.L.S. also testified that Scott put his hands down her pants and inserted his finger into her "private." This evidence established the act of deviate sexual conduct on both occasions which resulted in the convictions for the Class A felonies. Given this evidence, the constitutional prohibition against double jeopardy was not violated.

However, Scott also claims that we should apply a body of case law which is separate from the constitutional double jeopardy protections. In *Pierce v. State,* 761 N.E.2d 826, 830 (Ind.2002), after determining that the *Richardson* double jeopardy test was not violated, our Supreme Court, in a unanimous opinion, noted that our courts "have long adhered to a series of rules of statutory construction and common law that are often described as double jeopardy, but are not governed by the constitutional test set forth in *Richardson.*" Our Supreme Court then determined that Pierce's convictions violated the double jeopardy provisions which were in place before *Richardson. Pierce,* 761 N.E.2d at 830. Scott asks that we too apply the rules of statutory construction and common law which were in place before *Richardson* and determine that his convictions violate those prior prohibitions against double jeopardy.

Scott relies upon *Watkins v. State,* 575 N.E.2d 624 (Ind.1991) (per curiam), *Bowling v. State,* 560 N.E.2d 658 (Ind.1990), and *Ellis v. State,* 528 N.E.2d 60 (Ind. 1988) to support his contention that his convictions violate the pre-*Richardson* double jeopardy provisions. While Scott's argument may have merit under this line of cases, this court cannot address his contention under those cases. In *Richardson,* our Supreme Court explicitly stated that *Ellis* was superseded. 717 N.E.2d at 49. The holdings in both *Watkins* and *Bowling* were based upon the Supreme Court's prior decision in *Ellis.* Therefore, any "precedent" which may have existed to support Scott's contention is no longer controlling. While it does appear that our Supreme Court is willing to review double jeopardy claims under the rules of statutory construction and common law which were applicable before *Richardson,* this court does not have that ability regarding Scott's claim of double jeopardy. Absent some guidance from our Supreme Court in which it authorizes review of double jeopardy claims following multiple convictions for child molesting utilizing an analysis outside of the constitutional protections provided by *Richardson,* we may apply only the constitutional tests.

## IV

### *Length of Sentences Imposed*

■ Scott challenges the sentences received requiring him to serve the maximum aggregate term of 100 years for his convictions. He asserts that the trial court applied improper aggravating circumstances when it relied upon the age of the victims and the need for correctional and rehabilitative treatment. He also asserts that the sentence is manifestly unreasonable.

### A. *Improper Aggravating Circumstances*

■ Sentencing lies within the discretion of the trial court. *Louallen v. State, supra,* 755 N.E.2d 672, 677 (Ind.Ct. App.2001). We review the trial court's sentencing decision for an abuse of discretion. *Id.* The trial court must articulate the reasons for deviating from the presumptive sentence. *Jones v. State,* 698 N.E.2d 289, 290 (Ind.1998). We examine the record to ensure that the trial court explained its reasons for selecting the sentence it imposed when the trial court imposes a sentence other than the presumptive sentence. *Walter v. State,* 727 N.E.2d 443, 446 (Ind.2000).

■ When a trial court enhances a sentence by stating that an individual is in need of correctional or rehabilitative treatment at a penal facility, the trial court must give specific and individualized reasons why the defendant is in need of correctional treatment for a period in excess of the presumptive sentence. *Louallen,* 755 N.E.2d at 677–78. We agree that no reasons were given for the enhancement of the sentence upon this ground, and therefore, the trial court improperly relied upon it as an aggravator.

■ Scott also claims that the trial court erred in utilizing the age of the victims as an aggravator in this case. A fact which comprises a material element of a crime may not also be used as an aggravating circumstance to support an enhanced sentence. *Stewart v. State,* 531 N.E.2d 1146 (Ind.1988). However, in *Stewart,* our Supreme Court also noted that the particularized circumstances of the factual elements of the crime may be used as aggravating circumstances. 531 N.E.2d at 1150. The Supreme Court then held that the trial court properly utilized the age of the victim in a child molesting case as a proper aggravating circumstance, in addition to other aggravating circumstances, when the trial court considered that the victim was of "tender age." *Id.* In *Buchanan v. State,* 767 N.E.2d 967 (Ind. 2002), our Supreme Court considered the propriety of a trial court utilizing the age of the victim of the crime of child molesting in imposing a sentence. The Supreme Court noted that Ind.Code § 35–38–1–7.1(a)(4) (Burns Code Ed. Supp.2001) designates that the trial court consider whether the victim was less than twelve years of age. *Buchanan,* 767 N.E.2d at 971. Our Supreme Court went on to note that the aggravator considered by the trial court was not only that the child was under twelve years of age, but that the victim was five, a particularly tender age, and that there was a significant difference between the age of the victim and the perpetrator of the crime. *Id.*

For the crime of child molesting, I.C. § 35–42–4–3 requires that the victim be a child under fourteen (14) years of age. Because the age of the victim is a material element of the crime, the trial court erred in utilizing the ages of K.L.S. and M.S. as aggravators unless the trial court considered the particularized circumstances which related to the age of the victims. Here, there is no indication that the trial court considered any facts other than the

age of the victims in including this as an aggravator. Had the trial court considered the age of the victims by noting that the children were of particularly tender years, or considered their age in how it may have affected other factors, it may not have been inappropriate. *See Buchanan,* 767 N.E.2d at 971.

While the trial court may have erred in applying the previously discussed aggravating factors, the enhancement of a sentence may be sustained by a single aggravating circumstance. *See Stewart,* 531 N.E.2d at 1150. The trial court listed several other factors which it utilized as aggravators in enhancing Scott's sentence, including his violation of probation, his history of criminal activity, the nature and circumstances of the crime, and the violation of trust of his own children. These remaining factors are sufficient for the sentence enhancements.

### B. Manifestly Unreasonable Sentence

"Although a trial court may have acted within its lawful discretion in determining a sentence, Article 7, § 4 of the Indiana Constitution authorizes independent appellate review and revision of a sentence imposed by the trial court." *Buchanan,* 767 N.E.2d at 972. A sentence which is authorized by statute will not be revised unless it is manifestly unreasonable in light of the nature of the offense and the character of the offender. *King v. State,* 769 N.E.2d 239 (Ind.Ct.App.2002); *Louallen,* 755 N.E.2d at 678; Ind. Appellate Rule 7(B). The maximum sentence enhancement permitted by law should be reserved for the very worst offenses and offenders. *Brown v. State,* 760 N.E.2d 243, 245 (Ind.Ct.App.2002), *trans. denied.* However, in determining whether a defendant is among the very worst offenders, we should concentrate less on comparing the facts of this case to others, whether real or hypothetical, and focus more upon the nature, extent, and depravity of the offense for which the defendant is being sentenced and what it reveals about that individual's character. *Id.* at 247.

When considering the appropriateness of the sentence for the crime committed, courts should initially focus upon the presumptive sentence. *Hildebrandt v. State,* 770 N.E.2d 355 (Ind.Ct.App.2002). Then, trial courts may consider deviation from the presumptive sentence based upon a balancing of the factors which must be considered pursuant to I.C. § 35–38–1–7.1(a) together with any discretionary aggravating and mitigating factors found to exist. *Id.*

The presumptive sentence for a Class A felony is thirty (30) years, with the allowance of an additional twenty (20) years for aggravating circumstances. Ind.Code § 35–50–2–4 (Burns Code Ed. Repl.1998). Here, Scott was given the maximum fifty (50) year term for each Class A felony conviction and was ordered to serve them consecutively.

Scott contends that he is not among the very worst offenders, does not have a history of criminal activity, and that the molestation did not result in physical harm or harm that is more egregious than that suffered by other victims of similar offenses. Based upon the facts, we cannot fully agree with his assertions. At the time that Scott committed the acts of molestation, he was serving probation for a felony drug offense. And while there may not have been physical harm to the children, the trial court did focus on the amount of emotional and mental harm visited upon these particular children because their father molested them. The judge stated that he "wonder[ed] if they will ever be able to overcome the effects of the actions of this man." Transcript of Sen-

tencing Hearing at 8. While it is not clear to us upon review just how significant the mental and emotional harm was to the children as a result of the acts of molestation committed upon them by their father, the harm was evidently great as the trial court focused on it during sentencing, and the State focused on the harm in its statement to the court at sentencing.

Scott asserts that the facts of this case are similar to that of *Walker v. State,* 747 N.E.2d 536 (Ind.2001), in which our Supreme Court held that the an aggregate sentence of eighty years following convictions on two counts of child molesting as Class A felonies was manifestly unreasonable. The Court ordered the two forty-year sentences to be served concurrently. Scott correctly notes the similarities in *Walker* and this case. In both cases, the perpetrator was on probation when the crimes of molestation occurred. In both cases, the convictions for the Class A felonies were based upon two separate counts of child molestation which were identical and involved the same child. The final similarity is the lack of physical injury in both cases.

However, as stated in *Brown,* in reviewing whether a sentence is manifestly unreasonable, we are to focus less on how this crime compares to other crimes of a similar nature, and instead, focus on what the crime reveals about the defendant's character. And instead of focusing just on the similarities between this case and *Walker,* as Scott did, we must also look to the differences. In looking at this crime, we have a father, who has not been active in his children's lives as they have been living in foster care, attempting to make a new start and get his family back together. However, while given the opportunity to make this attempt and have overnight visitation with his children, Scott molested two of his children. The acts were not committed once, or only upon one child. Rather, Scott molested his eight-year-old daughter on two separate occasions. On another occasion, Scott molested his five-year-old son. While molesting K.L.S., Scott told her that she was pretty, that he loved her, and that he wished he was married to her.

While the aggregate term of one hundred years is harsh, it is a punishment that fits the crime in this case. Scott is not an individual that made a single mistake. Scott is an individual that preyed upon his own children when they would have overnight visitation with him. In an interview with Detective Hochstetler, Scott attempted to explain his touching of K.L.S. on one occasion as an accident and to place the blame on K.L.S. He was not a man who was remorseful for his crime or admitted to his problem and was seeking help. Scott had previous run-ins with the law and was on probation for a drug offense. Finally, we must recognize the violation of trust between Scott and his children and the amount of emotional and psychological harm which was placed upon these children. In light of the nature of these episodes of child molesting and the character of Scott, we cannot say that his sentence was manifestly unreasonable.

### Conclusion

We affirm Scott's convictions for two Class A felonies of child molesting by deviate sexual conduct, as the evidence was sufficient to support the convictions. We also hold that the trial court did not commit fundamental error in instructing the jury. Scott's convictions for Class A and Class C child molesting do not violate constitutional double jeopardy prohibitions. Finally, while the trial court relied upon two improper aggravating circumstances, the remaining aggravating circumstances were properly applied and Scott's sentence

for the Class A felonies was not manifestly unreasonable.

The judgment is affirmed.

BAKER, J., concurs.

DARDEN, J., concurs in result.