# MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Nov 30 2016, 7:54 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Timothy J. O'Connor
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Gregory F. Zoeller
Attorney General of Indiana

Paula J. Beller
Deputy Attorney General
Indianapolis, Indiana

## IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Jeremy Shrum, <br> *Appellant-Defendant,* <br><br> v. <br><br> State of Indiana, <br> *Appellee-Plaintiff.* | November 30. 2016 <br><br> Court of Appeals Case No. <br> 49A05-1604-CR-829 <br><br> Appeal from the Marion Superior Court <br><br> The Honorable Lisa F. Borges, Judge <br><br> Trial Court Cause No. <br> 49G04-1505-F1-16218 |

**Altice, Judge.**

**Case Summary**

[1] Jeremy Shrum molested his nine-year-old, developmentally-delayed daughter, S.S. The jury found him guilty as charged of three counts of child molesting, two as Level 1 felonies and one as a Level 4 felony. Due to double jeopardy concerns, the trial court entered a judgment of conviction only on Count I, a Level 1 felony. Shrum contends that his conviction is not supported by sufficient evidence and that the trial court abused its discretion in sentencing him.

[2] We affirm.

## Facts & Procedural History

[3] S.S. was born four months premature in August 2005. She suffered two strokes shortly after her birth, has cerebral palsy, and the right side of her brain never fully developed. S.S. also began having seizures around the age of eight. S.S. is developmentally delayed. She lives with her mother (Mother), step-father, two sisters, and younger brother. Shrum is the father of S.S., her older sister (C.S.), and her younger brother (J.S.). The three children are all close in age. At some point after Shrum and Mother ended their relationship, Shrum began exercising parenting time with his children on alternating weekends. Mother allowed additional weekends when requested by Shrum.

[4] On Wednesday, April 29, 2015, Shrum sent Mother a text message asking to have the children for the upcoming weekend. Mother agreed. While at Shrum's house that Saturday night, May 2, 2015, S.S. slept on the couch in the living room, as she often did. C.S. and J.S. slept in the bottom bunk in Shrum's

bedroom. Shrum's father also lived in the house and was asleep in his own bedroom.

[5] At some point during the night, S.S. awoke to find Shrum on top of her. S.S. was on her back and her pajama pants and pull-up diaper had been removed. Shrum had on boxers, a shirt, and pants at the time. He told S.S. to go in the bedroom where C.S. and J.S. were sleeping. Upon entering the bedroom, S.S. saw a blanket on the floor. Shrum followed her into the bedroom, placed her pants and pull-up on the dresser, and instructed her to lay on the blanket. Although still wearing pants, Shrum exposed his penis at some point.

[6] Shrum spread S.S.'s legs apart and lifted them as he told S.S. to scoot up. He then placed one of his hands on the bed and another on the floor and with his knees on the ground leaned over his nine-year-old daughter. According to S.S., he then told her to "grab his wiener" and "stick it in [her] pee hole." *Transcript* at 37. S.S. tried to comply but his "wiener" would not go in her "pee hole".[1] She testified, however, that she felt his "wiener" touch her "pee hole" and that it felt "really gross." *Id*. at 38. S.S. indicated that her "pee hole" felt wet. Shrum also attempted on his own to put his "wiener" in while supporting himself above her. He became mad when it was not going in and was "yelling at [S.S.] in a quiet voice." *Id*. at 71. His hand then slipped from the bed and hit S.S. near her eye. She began to cry, which caused her sister and brother to stir.

---

[1] S.S. described a "wiener" as the body part that "boys use to pee" and her "pee hole" as the body part in the middle of her body that she uses to "pee". *Id*. at 37.

Shrum promptly stood up and told S.S. to go into the bathroom and put her pull-up and pants back on.

[7] The following day, C.S. overheard Shrum apologizing and asking S.S. not to tell anyone. He also bought a pool for the children to use on Sunday. While alone swimming with C.S., S.S. told her about the sexual abuse. Though not customary, Shrum kept the children another night. Mother picked them up at school Monday afternoon. After they were home, Mother overheard a conversation between S.S. and C.S. that led her to inquire further. S.S. told Mother what had happened, and Mother immediately called the police.

[8] On May 5, 2015, S.S. was seen by Casey O'Neal, a sexual assault nurse. When O'Neal asked S.S. if she knew why she was there, S.S. replied, "Yes. Because my dad put his wiener in my pee hole and made me touch his wiener." *Id*. at 136. Thereafter, when O'Neal was positioning S.S. in stirrups for the exam, S.S. stated, "This is how daddy made me lay." *Id*. O'Neal did not observe any injuries to S.S.'s genital area, but S.S. did complain of pain during the vaginal exam.

[9] On May 11, 2015, the State charged Shrum with four counts: Count I, child molesting as a Level 1 felony; Count II, child molesting as a Level 1 felony; Count III, child molesting as a Level 4 felony; and Count IV, battery as a Level 5 felony. Count IV was later dismissed on the State's motion. Shrum was tried by a jury on February 22 and 23, 2016. The jury found him guilty as charged. At the sentencing hearing on March 23, 2016, the trial court vacated Counts II

and III on double jeopardy grounds and sentenced Shrum on Count I to thirty-five years in prison, with five of those years suspended to probation. Shrum now appeals his conviction and sentence. Additional facts will be provided below as needed.

## Discussion & Decision

### Sufficiency of the Evidence

[10] Shrum contends that the evidence was insufficient to support his conviction for child molesting as a Level 1 felony. Specifically, he argues that there was scant evidence of penetration because S.S. testified that, despite trying, Shrum's penis "didn't go in" and there was no medical or physical evidence of penetration. *Transcript* at 38.

[11] Our standard of review for sufficiency of the evidence claims is well settled. We consider only the probative evidence and reasonable inferences supporting the conviction. *Drane v. State,* 867 N.E.2d 144, 146 (Ind. 2007). We do not assess the credibility of witnesses or reweigh evidence, and we will affirm unless no reasonable fact-finder could find the elements of the crime proven beyond a reasonable doubt. *Id.* It is not necessary that the evidence overcome every reasonable hypothesis of innocence; rather, the evidence will be found sufficient if an inference may reasonably be drawn from it to support the conviction. *Id.* at 147.

[12] To obtain a conviction for Level 1 child molesting as charged, the State was required to prove that Shrum, being over the age of twenty-one, knowingly or intentionally performed sexual intercourse with S.S., a child under the age of fourteen. Ind. Code § 35-42-4-3(a)(1). The legislature has defined "sexual intercourse" as "an act that includes any penetration of the female sex organ by the male sex organ." Ind. Code § 35-31.5-2-302. "The statute does not require that the vagina be penetrated, only that the female sex organ be penetrated." *Thompson v. State*, 674 N.E.2d 1307, 1311 (Ind. 1996). Penetration of the external genitalia is sufficient to sustain a conviction, and "any reference to the part of the female anatomy which is used to urinate also refers to the external genitalia, and consequently, to the 'sex organ.'" *Scott v. State*, 771 N.E.2d 718, 724-25 (Ind. Ct. App. 2002), *trans. denied*, *disapproved of on other grounds by Louallen v. State*, 778 N.E.2d 794 (Ind. 2002). "Proof of the slightest penetration is sufficient to sustain convictions for child molesting." *Spurlock v. State*, 675 N.E.2d 312, 315 (Ind. 1996).

[13] Shrum likens this case to *Spurlock*. The victim in *Spurlock* was twelve years old at the time of her molestation and, according to our Supreme Court, "of an age to understand and respond to the questions" at trial. *Id*. at 315. She testified that the defendant tried to have sexual intercourse with her on one occasion. When asked if the defendant had put his penis inside her, the victim responded, "I don't know." *Id*. Although the victim testified that the defendant's penis touched her vagina, the Court observed that she "never said that it penetrated or went inside, and explicitly said that she did not know whether that

occurred." *Id.* The Court also found that the victim had only a generalized understanding of the term "vagina", which "support[ed] the view that any penetration, however slight, would have been understood by [the victim] as penetration of the vagina." *Id.* In the absence of testimony that any penetration occurred or other evidence of penetration, the Court concluded that "the jury had no evidence from which it could find Spurlock guilty beyond a reasonable doubt of the count of child molesting that was based upon an alleged act of intercourse." *Id. See also Adcock v. State*, 22 N.E.3d 720, 728-29 (Ind. Ct. App. 2014) (twenty-year-old witness testified regarding earlier molestations and indicated that the abuse escalated to the defendant rubbing his penis against her "private area, my vagina"; "[victim] had the capability of describing such penetration by Adcock's penis if it had occurred, but she did not" and there was no medical or physical evidence of penetration).

[14] Here, the victim was a developmentally-disabled, nine-year-old girl. She testified that despite more than one attempt, her father's penis "didn't go in" her "pee hole". *Transcript* at 38. Were this all the evidence, we would be constrained to reach the same result as *Spurlock*. S.S. provided much more detailed testimony, however, that must not be overlooked.

[15] S.S. described how her father instructed her to lay on the ground. He then positioned S.S. with her legs bent and spread apart for easier access to her vagina. On his hands and knees, Shrum lowered his body over S.S. and told her to "grab his wiener" and "stick it in [her] pee hole." *Id.* at 37. S.S. tried to comply with her father's request but his penis simply would not go in. S.S. felt

the penis touch her "pee hole", which felt "really gross" and made her "pee hole" wet. *Id.* at 38. Shrum became mad when S.S. could not insert his penis as directed, and he made another attempt on his own. The assault ended only when his hand slipped from the bed and struck S.S. in the eye.

[16] Upon meeting with the sexual assault nurse – O'Neal, S.S. informed O'Neal that she knew she was being examined because "my dad put his wiener in my pee hole and made me touch his wiener." *Id.* at 136. Further, while being positioned in the stirrups for the vaginal exam, S.S. volunteered, "This is how daddy made me lay." *Id.*

[17] In sum, the record reveals that Shrum made at least two attempts to penetrate S.S.'s vagina with S.S. carefully positioned by Shrum for easier entry. While his adult penis would not go in the child's "pee hole", S.S. testified that it did touch her "pee hole". S.S.'s limited ability to understand and differentiate between various areas of her genitalia is understandable given her age and developmental delays. Considering the totality of the evidence, we conclude that the jury could reasonably infer that Shrum's penis at least slightly penetrated S.S.'s external genitalia.

### Sentencing

[18] Shrum next argues that the trial court abused its discretion when it found the victim's age to be a sentencing aggravator. Shrum correctly observes that the crime for which he was convicted required that the State prove the victim was under the age of fourteen. I.C. § 35-42-4-3.

[19]     "Where a trial court's reason for imposing a sentence greater than the advisory sentence includes material elements of the offense, absent something unique about the circumstances that would justify deviating from the advisory sentence, that reason is 'improper as a matter of law.'" *Gomillia v. State*, 13 N.E.3d 846, 852-53 (Ind. 2014) (quoting *Anglemyer v. State*, 868 N.E.2d 482, 491 (Ind. 2007)). In this case, however, the trial court expressly indicated at sentencing, "I can't use age as an aggravator because it's an element of the offense." *Transcript* at 266. In its sentencing statement, the court then specifically found as aggravating the fact that the victim had disabilities and that Shrum was in a position of trust with the victim.[2] As mitigating, the court addressed Shrum's minimal criminal history and his mental health issues.

[20]     After setting out the aggravating and mitigating circumstances, the court generally addressed the harm and damage to child molest victims, and the court expressed its desire that S.S. receive counseling. In this context, the court noted S.S.'s emotional responses when looking at Shrum during her testimony, her age at trial and at the time of the offense, and the traumatic nature of this event in S.S.'s life. When read in context, it is clear that the trial court's reference to the age of the victim was not intended as a finding of aggravation, which the

---

[2] In this regard, the trial court stated:

> It's an aggravating circumstance that the victim is a person who does have disabilities. And for the record, she's special needs due to her disabilities from birth which include Cerebral Palsy, a brain injury resulting from a stroke, and developmental delays....And it's an aggravating circumstance that the Defendant was in a position of trust with the victim as he's the victim's father.

*Id.* at 273-74.

trial court recognized would be improper. The trial court's written sentencing statement further reveals that the victim's age was not used by the trial court as an aggravating factor. Accordingly, there is no basis for Shrum's abuse of discretion argument.

Judgment affirmed.

Bradford, J. and Pyle, J., concur.