## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Jan 04 2018, 10:40 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Deborah Markisohn
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.,
Attorney General of Indiana

Chandra K. Hein
Deputy Attorney General
Indianapolis, Indiana

## IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Maman Bachir Dankassoua, *Appellant-Defendant,* | January 4, 2018 |
| | Court of Appeals Case No. 49A05-1706-CR-1370 |
| v. | Appeal from the Marion Superior Court |
| State of Indiana, *Appellee-Plaintiff.* | The Honorable Sheila A. Carlisle, Judge The Honorable Stanley E. Kroh, Magistrate |
| | Trial Court Cause No. 49G03-1606-F1-22200 |

**Barnes, Judge.**

# Case Summary

Maman Bachir Dankassoua appeals his conviction and sentence for Level 1 felony child molesting. We affirm.

# Issues

The issues before us are:

I.      whether sufficient evidence exists to sustain Dankassoua's conviction; and

II.     whether Dankassoua's twenty-five-year sentence is inappropriate.

# Facts

Dankassoua married T.S. in 2010. Although they separated in 2013, at the time of the relevant events, Dankassoua still visited T.S.'s household in Indianapolis approximately once each month. T.S. has three children, Am.S. (age 21), A.P. (age 11), and A.S. (age 1). On June 6, 2016, Dankassoua visited T.S.'s home. He tried to persuade her to have sex with him, but she refused. T.S. left for work, and Dankassoua remained at her home. A.P. was on the living room sofa, and Am.S. and A.S. were in a bedroom. Dankassoua sat next to A.P. on the sofa. Using his hand, he touched "inside" between A.P.'s legs. Tr. Vol. II p. 71. He also forced A.P. to touch his penis with her hand.

Am.S emerged from the bedroom with A.S., then returned to retrieve an item. A.S. went into the living room. As A.S. entered the living room, "A.P. made a

loud thump to the floor like she was jumping or something." *Id.* at 50. Am.S. re-emerged from the bedroom, went into the living room, and told A.P. that she was going to "tell[ ] on her" and "call . . . mom." *Id*. at 50, 84. Am.S. later testified that she intended to scare A.P. into being less noisy, when she threatened to call their mother. Am.S. went back into the bedroom. A.P. called to Am.S. and said that Dankassoua wanted to speak with her. When Am.S. did not respond, A.P. and Danksassoua entered the bedroom. Dankassoua asked, "[W]hy are you going to tell your mom? Why are you going to tell your mom." *Id*. at 51. "He looked worried and [said,] '[he] was just telling [A.P.] about boys.'" *Id*. Dankassoua told Am.S. that "he was explaining to [A.P.], like, how the body works and things like that." *Id*. at 52. Am.S. became concerned and tried telephoning T.S.; unable to reach her, Am.S. sent T.S. a text message. Am.S. also called her grandmother.

[3] T.S. returned Am.S.'s call and asked to speak to A.P, who spoke to her mother privately. T.S. returned home soon thereafter and asked Dankassoua "what did he do to my daughter." *Id*. at 100. Dankassoua "was telling [T.S.] that he didn't do anything at first"; then, "he told [T.S.] he was sorry." *Id*. The children's grandmother and aunts arrived, and T.S.'s sister called the police. The police and the Department of Child services referred A.P. to the St. Vincent Hospital emergency room.

[4] On June 10, 2016, the State charged Dankassoua with one count of Level 1 felony child molesting and one count of Level 4 felony child molesting. He was tried by a jury on May 4-5, 2017. At trial, A.P. was asked to circle on a

diagram of the female body the part of her body that Dankassoua touched; she circled the genital area. When asked, "A.P. did [Dankassoua]'s hand touch you inside between your legs, or outside, or something else," A.P. responded, "Inside." *Id*. at 71. She testified further that Dankassoua touched her genitalia underneath her undergarments. A.P. also testified that she had touched Dankassoua's genitalia "under" his underwear with her hand "[b]ecause he kept grabbing my hand and then he made me touch it." *Id*. at 72, 73.

[5]   Nurse Ashli Smiley of St. Vincent Hospital testified that she was the responding sexual assault nurse examiner for A.P. Nurse Smiley's sexual assault examination of A.P. revealed "isolated" evidence of what may have been bodily fluid on A.P.'s right middle finger. *Id*. at 149. Nurse Smiley testified that she also observed injuries to A.P.'s internal genitalia, including "redness, abrasions, . . . and uptake," which is the term for the effect of blue Toluidine dye "stick[ing] to any skin that is not in tact [sic]." *Id*. at 154, 155. Nurse Smiley testified that injuries in the genital area "heal fairly quickly"; that the dye "generally will not stick to a healing injury"; and that the uptake effect she observed indicated that A.P.'s injuries were "more open," which tended to suggest that the injury had likely occurred recently. *Id*. at 170.

[6]   Officer Justin Hickman of the Indianapolis Metropolitan Police Department's Child Abuse Unit testified that he interviewed Dankassoua after the alleged molestation. He testified that Dankassoua "asked to use the restroom" before the interview, and was notified that he would be observed "the entire time." *Id*. at 227. Hickman testified that "when [Dankassoua] approached the toilet, he

immediately . . . grabbed a hand full [sic] of toilet paper . . . and began vigorously cleaning, or wiping his genitals"; before Officer Hickman could collect the toilet paper for testing, Dankassoua "dropped [it] into the . . . toilet bowl." *Id*. at 228.

[7] The jury returned guilty verdicts on both counts. At Dankassoua's sentencing hearing on May 30, 2017, the trial court vacated the Level 4 felony conviction due to double jeopardy concerns. Counsel for Dankassoua asserted, as mitigating, that the instant conviction was Dankassoua's only criminal conviction and that he suffered from "life-threatening and life ending" cirrhosis of the liver with an "extremely poor" prognosis. Tr. Vol. III p. 28. In his statement to the trial court, Dankassoua stated that he "d[id] not feel guilty of what [he was] accused of"; that the molestation allegations stemmed from T.S.'s anger that Dankassoua had stopped helping her financially; and maintained that "you have to be almost evil to touch a child and it's not something [he was] able to do." *Id*. at 30-31.

[8] In sentencing Dankassoua, the trial court found, as aggravating circumstances that he had violated his position of trust as A.P.'s stepfather. The trial court also noted that it had "considered the mitigators brought up by" defense counsel. *Id*. at 31. The trial court sentenced him to serve twenty-five years executed in the Department of Correction; ordered him to register as a lifetime registrant on the sex offender registry; designated him a credit-restricted felon pursuant to Indiana Code Section 35-31.5-2-72; imposed a $100 fine; and deemed him a sexually violent predator. Dankassoua now appeals.

# Analysis

## I. Sufficiency of the Evidence

[9] Dankassoua first challenges the sufficiency of the evidence supporting his conviction for Level 1 felony child molesting. When analyzing a claim of insufficient evidence to support a conviction, we must consider only the probative evidence and reasonable inferences supporting the verdict. *Sallee v. State,* 51 N.E.3d 130, 133 (Ind. 2016). "It is the fact-finder's role, not that of appellate courts, to assess witness credibility and weigh the evidence to determine whether it is sufficient to support a conviction." *Id.* The evidence does not have to overcome every reasonable hypothesis of innocence, and it is sufficient if an inference may reasonably be drawn to support the verdict. *Id.*

[10] In order to convict him of Level 1 felony child molesting, the State was required to prove that Dankassoua, a person of at least twenty-one years of age, knowingly or intentionally performed sexual intercourse or other sexual conduct with A.P., a child under fourteen years of age. Ind. Code § 35-42-4-3. "Other sexual conduct" includes "the penetration of the sex organ . . . of a person by an object." I.C. § 35-31.5-2-221.5. The term "object" includes a finger. *See D'Paffo v. State,* 778 N.E.2d 798, 802 (Ind. Ct. App. 2002).

[11] On appeal, Dankassoua does not deny touching A.P.; rather, he challenges the sufficiency of the State's evidence to prove that he committed an act of penetration. Proof of the slightest penetration is sufficient to sustain convictions for child molesting. *Dinger v. State,* 540 N.E.2d 39, 40 (Ind. 1989).

Further, we have held that penetration of external genitalia is sufficient to sustain a conviction for child molesting. *Short v. State,* 564 N.E.2d 553, 558 (Ind. Ct. App. 1991) (holding that our statute defining sexual intercourse does not require that the vagina be penetrated, only that the female sex organ, including the external genitalia, be penetrated).

[12] In *Scott v. State,* 771 N.E.2d 718 (Ind. Ct. App. 2002), *disapproved on other grounds by Louallen v. State,* 778 N.E.2d 794, 798 n.3 (Ind. 2002), the defendant allegedly penetrated a minor child's sex organ with his finger. At trial, the child testified that the defendant had put his finger in her "private." *Id.* at 724. In concluding that sufficient evidence existed to sustain the defendant's conviction, we reasoned, "Upon testifying that [the defendant] inserted his finger into her 'private,' and that she used her 'private' to go to the restroom, [the child] provided information upon which the jury could determine that [the defendant] had inserted his finger into her external genitalia." *Id.* at 725. Such is the case here, where A.P. testified that Dankassoua touched "inside" between her legs with his hand, and Nurse Smiley testified that the sexual assault examination showed injuries to A.P.'s internal genitalia, including "redness, abrasions, . . . and uptake. *Id*. at 67-71, 154, 155. The State presented sufficient evidence of an act of penetration from which the jury could conclude beyond a reasonable doubt that Dankassoua committed Level 1 felony child molesting.

## II. Inappropriate Sentence

[13] The other issue before us is whether Dankassoua's sentence is inappropriate under Indiana Appellate Rule 7(B) in light of his character and the nature of the

offenses. Although Rule 7(B) does not require us to be "extremely" deferential to a trial court's sentencing decision, we still must give due consideration to that decision. *Rutherford v. State,* 866 N.E.2d 867, 873 (Ind. Ct. App. 2007). We also understand and recognize the unique perspective a trial court brings to its sentencing decisions. *Id.* "Additionally, a defendant bears the burden of persuading the appellate court that his or her sentence is inappropriate." *Id.*

[14] The principal role of Rule 7(B) review "should be to attempt to leaven the outliers, and identify some guiding principles for trial courts and those charged with improvement of the sentencing statutes, but not to achieve a perceived 'correct' result in each case." *Cardwell v. State,* 895 N.E.2d 1219, 1225 (Ind. 2008). We "should focus on the forest—the aggregate sentence—rather than the trees—consecutive or concurrent, number of counts, or length of the sentence on any individual count." *Id.* Whether a sentence is inappropriate ultimately turns on the culpability of the defendant, the severity of the crime, the damage done to others, and myriad other factors that come to light in a given case. *Id.* at 1224. When reviewing the appropriateness of a sentence under Rule 7(B), we may consider all aspects of the penal consequences imposed by the trial court in sentencing the defendant, including whether a portion of the sentence was suspended. *Davidson v. State,* 926 N.E.2d 1023, 1025 (Ind. 2010).

[15] Regarding the nature of the offenses, when Dankassoua's estranged wife rebuffed his advances and left her children alone with him, he touched the internal genitalia of eleven-year old A.P. and forced her to touch his penis.

Dankassoua's actions constituted a breach of trust given that A.P. was his stepdaughter and T.S. had entrusted her children into his care. As for Dankassoua's character, he engaged a child—his stepdaughter—in sexual activity and then, in an effort to conceal his actions, he lied to and manipulated A.P.'s older sister, who had witnessed his suspicious behavior, and tried to rationalize his actions. Before being questioned by police, Dankassoua—while under police observation—destroyed forensic evidence before the police could retrieve and examine it. The sentencing range for a Level 1 felony is from twenty to fifty years. Based on the foregoing, we cannot say that the nature of Dankassoua's offense and his character necessarily dictate that his twenty-five-year sentence is inappropriate.

## Conclusion

[16] There is sufficient evidence to sustain Dankassoua's conviction for Level 1 felony child molesting. His twenty-five-year sentence is not inappropriate.

Affirmed.

Najam, J., and Mathias, J., concur.